AMERICAN OPTICAL CO. v. NEW JERSEY OPTICAL CO. et al.

No. 1583.

District Court, D. Massachusetts.

Dec. 15, 1944.

See, also, 50 F.Supp. 806.

Brooks Potter, John L. Hall, Frederick H. Nash, and Marcien Jenckes (all of Choate, Hall & Stewart), all of Boston, Mass., for plaintiff.

John M. Russell, Charles B. Rugg, and Edward B. Hanify, all of Boston, Mass., and Daniel V. Mahoney and Morris D. Jackson, both of New York City, for defendant.

SWEENEY, District Judge.

This is a motion for summary judgment dismissing the plaintiff's complaint. The original action was brought by the American Optical Company in the Municipal Court of the City of Boston to recover unpaid royalties under certain patent license and sublicense agreements. The defendant, after removal of the cause to this Court because of diversity of citizenship, interposed an answer denying liability for the royalties on the ground that the agreements were invalid as part of a conspiracy unlawfully to monopolize and restrain trade in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The answer also included a counterclaim for treble damages. Defendant later amended its answer to allege the invalidity of all the patents covered by the licenses. Trial of the case on the merits has been postponed so that war production will not be impeded. The defendant now moves for summary judgment dismissing the action on the ground that illegality of the license agreements is apparent on the face of the complaint.

Both the plaintiff and the defendant are manufacturers of spectacle frames and mountings. The license agreements involve three groups of patents of which the American . Optical Company alleges it is owner or exclusive licensee. The first license agreement (hereinafter referred to as the Ful-Vue license) was entered into May 25, 1934, and authorizes the New Jersey Optical Company to make, use and sell the inventions covered by two U. S. patents—the Emons, re-issue, No. 17994, and the Smith, re-issue, No. 17996. Defendant

maintains that this license agreement is illegal on its face because of the following provisions contained therein: "The Rimmed Type Of Spectacle Unit shall include a front having two end pieces and also a pair of temples. The fronts and temples may be either assembled or unassembled as long as the component parts of each complete unit are delivered in one shipment. Fronts suitable for use in making complete units embodying the same patent inventions are not to be sold separately without temples. The Rimless Type Of Spectacle Unit shall include a pair of end pieces and a pair of temples. The component parts of each unit shall be delivered in one shipment. Temples only for rimmed or rimless units may be sold as such for replacement parts."

It is contended by the defendant that "fronts" used in the rimmed type unit are not patented and that the plaintiff is using the Emons and Smith patents to restrain competition in the marketing of unpatented fronts. The same contention is made in regard to the temples and end pieces used in the rimless type mountings, with the further allegation that royalties in the sum of $246.06 were charged on Ful-Vue temples and ends, said temples and ends not being patented. In addition, New Jersey Optical asserts that the Ful-Vue license agreement is illegal because of the requirement imposed therein that the defendant "will not sell the inventions covered by said patents in England, North Ireland, France, and Germany". Such a geographical limitation, it is maintained, is an evident violation of the Sherman Act, 15 U.S.C.A. § 1.

The second license agreement (hereinafter referred to as the Numont license), was entered into September 13, 1939, and covers the Uhlemann patent No. 2,108,875, and the subsequent Uhlemann patents Nos. 2,164,557 and 2,188,380. This agreement provides for royalty payments on Numont Ful-Vue Semi-Rimless Frames. The defendant contends that every claim under the Uhlemann patent No. 2,108,875 includes a pair of lenses as an element and that the plaintiff has no patent rights under this patent on a frame independently of the lenses. The defendant also asserts that since the Numont license provides that all devices manufactured under its authority shall embody the Smith and Emons patents, supra, the invalidity of the Ful-Vue agreement infects the Numont agreement. The result, it is alleged, is a restraint of competition in the marketing of unpatented frames.

The third license agreement (hereinafter called the E-Z-Mont license) was entered into November 28, 1940, and covers the Nerney patents Nos. 1,747,904 and 1,984,541, and an application which became Snavely patent No. 2,236,304. No allegedly illegal provisions are found in the terms of the E-Z-Mont license itself but the defendant maintains that the illegal elements in the Ful-Vue agreement have also become a part of the E-Z-Mont agreement, making the latter equally invalid as a further restraint of competition in unpatented fronts of rimmed type spectacle units, and temples and end pieces of rimless type spectacle units.

The defendant bases its motion for summary judgment primarily on the decision of the United States Supreme Court in Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268. This was a suit brought by Mid-Continent against Mercoid for contributory infringement of a patent on a domestic heating system composed of three main elements— a motor-driven stoker, a room thermostat and a combination stoker switch. The claims of the patent were combination claims but the stoker switch was itself unpatented. Mid-Continent granted an exclusive license to Minneapolis-Honeywell to make, use and sell the combination patented system. Neither Mid-Continent nor Minneapolis-Honeywell manufactured or installed heating systems under the combination patent. The royalty payments under the license were based upon sales of the stoker switch, and Minneapolis-Honeywell granted the right to use the combination patent only when the user purchased the necessary combustion stoker switches from Minneapolis-Honeywell or its sublicensees. The alleged contributory infringement occurred when Mercoid manufactured and sold its own combustion stoker switches for use in the patented combination. Mercoid filed a counterclaim charging Mid-Continent and Minneapolis-Honeywell with conspiracy to extend the patent monopoly to include an unpatented appliance in violation of the anti-trust laws. The Supreme Court denied relief for contributory infringement because of complainant's misuse of the patent to secure a limited monopoly of the unpatented stoker switches.

The actual holding in this case does not extend the doctrine of the invalidity of certain restrictive licensing agreements

greatly beyond the limits established by the decided cases. It is basically a reaffirmation of earlier decisions. Carbice Corporation v. American Patents Development Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367. Its significance lies chiefly in the application of the doctrine to the field of combination patents, where "the unpatented device is part of the patented whole." Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, at page 667, 64 S.Ct. 272. But this extension concerns the nature of the relationship of the patented to the unpatented device. There is no enlargement of the scope of the activities which are to result in judicial condemnation.

On analysis, none of the authorities cited above warrants a holding by this Court that the licensing agreements between American Optical and New Jersey Optical are illegal. In all of the above cited cases the licensor granted licenses under its patent only on condition that the licensee purchase from the licensor, or its sublicensees, some unpatented device. Furthermore, the respective licensors were deriving their profits substantially from the sale of the unpatented device, rather than from the sale or licensing of the patented article itself. In the licensing agreements now under consideration there is no requirement that New Jersey Optical purchase anything from American Optical. There is no evidence that the allegedly objectionable provisions in the agreements were inserted to promote sales by the plaintiff of unpatented parts.

The other cases relied on by the defendant, which were decided before the Mercoid case, are also distinguishable on their facts. National Lock Washer Co. v. George K. Garrett Co., 3 Cir., 137 F.2d 255, involved an agreement by the licensees not to manufacture any other form of nontangling washers except those covered by the license. The agreement was condemned for misuse by the licensor of the patent monopoly to suppress competition in goods not covered by the patent. There is no such suppression by American Optical in the agreements under consideration here. New Jersey Optical remained free to obtain the unpatented parts for the complete spectacle units anywhere it wished. The requirements as to quality standards in the agreements were not to suppress competition, but to promote a legitimate business interest of the licensor. As long as the product as a whole was approved, New Jersey was under no restriction as to the type of unpatented parts it could use. There is no indication that American Optical utilized its approval rights to effect the result condemned in the National Lock Washer case.

Barber-Colman Co. v. National Tool Co., 6 Cir., 136 F.2d 339, may also be distinguished. This involved a license agreement which attempted to use a machine patent and a process patent to control the selling price of the unpatented products of the machine. There is no such plan in the case at bar.

In the Mercoid case there is some broad language which might justify the application of the restrictive licensing doctrine to other situations than the one then before the Court. Mr. Justice Douglas, speaking for the majority, stated that, "the necessities or convenience of the patentee do not justify any use of the monopoly of the patent to create another monopoly. The fact that the patentee has the power to refuse a license does not enable him to enlarge the monopoly of the patent by the expedient of attaching conditions to its use". 320 U.S. 661 at page 666, 64 S.Ct. 271. There is language in similar vein that if "the restraint is lawful because of the patent, the patent will have been expanded by contract." 320 U.S. 661 at page 667, 64 S.Ct. 272. These statements re-echo like attitudes in the earlier decisions. Carbice Corporation v. American Development Patents Corporation, supra, 283 U.S. 27, at page 33, 51 S.Ct. 334, 75 L.Ed. 819; Morton Salt Co. v. G. S. Suppiger Co., supra, 314 U.S. 488, at page 491, 62 S.Ct. 402, 86 L.Ed. 363; Ethyl Gasoline Corporation v. United States, 309 U.S. 436, 456, 60 S.Ct. 618, 84 L.Ed. 852.

That such language indicates a willingness to extend the Mercoid doctrine beyond the precise facts involved therein, this Court is ready to agree. But it is doubtful that the extension is meant to encompass the situation in the instant case as long as United States v. General Electric Co., 272 U.S. 476, 490, 47 S.Ct. 192, 71 L.Ed. 362, remains in authority. This case, taken in conjunction with the Mercoid case, leaves an undefined residuum of valid restrictive licensing agreements which are reasonably adapted to exploit the patent monopoly. A restriction is not invalid

per se merely because it is part of a patent license agreement. Reasonableness of the provisions, both from the viewpoint of the licensor's business needs and the public interest, is relevant on the question of illegality.

In the Ful-Vue license agreement there is a requirement that fronts cannot be sold separately without temples, and we may assume, as the defendant contends, that fronts are not within the patent claims. Such a provision hardly falls within the purview of the Mercoid doctrine. The licensee is not compelled to purchase fronts from American Optical or from any other source. New Jersey Optical may make its own fronts. The provision is not designed to promote sales of fronts by the licensor, or to otherwise produce pecuniary advantage except by reason of the maintenance of proper quality standards for the product as a whole. American Optical has a substantial investment in the Ful-Vue frame for which high quality standards have already been established. Where there is danger of substitution of temples of inferior quality or workmanship, which at times occurs in the optical industry, the imposition of the requirement of unit sale may well be found by a jury to be not unreasonable. The principles developed in nonpatent cases under Section 3 of the Clayton Act, 15 U.S.C.A. § 14, should be applicable here. Federal Trade Commission v. Sinclair Refining Co., 1923, 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746; Pick Mfg. Co. v. General Motors Corporation, 7 Cir., 80 F.2d 641, affirmed 299 U.S. 3, 57 S.Ct. 1, 81 L.Ed. 4. The provisions with respect to the rimless type spectacle unit serve essentially the same purpose, and are equally without the legitimate scope of the Mercoid doctrine.

If the Ful-Vue license provisions are incorporated into the Numont agreement, as the defendant maintains, the Numont license is not thereby invalidated, since the Ful-Vue restrictions may be found by a jury to be neither unreasonable nor unlawful. It is unnecessary for the purposes of this motion to decide whether such a construction should be placed upon the terms of the Numont agreement.

The E-Z-Mont license has no requirement that the devices manufactured under it shall embody the inventions covered by the Smith and Emons Ful-Vue patents. Even if such a condition were imposed on the licensee the license would not thereby become illegally restrictive, since the test of reasonableness used in regard to Ful-Vue is equally applicable to E-Z-Mont structures.

Inasmuch as the Mercoid decision is deemed inapplicable to the case at bar it is unnecessary to interpret the meaning of all of the patent claims here involved. But the defendant contends that illegality is to be found in the assessment of $246.06 as royalties on Ful-Vue temples and ends which are claimed to be unpatented as such. Defendant makes a similar contention in regard to royalties of $19.74 due under the Numont license on 987 Numont Ful-Vue semi-rimless frames. It is alleged that every claim of Uhlemann patent No. 2,108,875 includes a pair of lenses as an element and that American Optical has no rights under this patent on a frame independently of the lenses.

In the usual infringement case where the validity or scope of the patents is in issue the question cannot be decided without the aid of expert testimony and reference to file wrappers and prior art. Such an issue is not rightly disposed of by summary judgment. E. W. Bliss Co. v. Gold Metal Process Co., D.C., 47 F.Supp. 897; Weil v. N. J. Richman Co., D.C., 34 F.Supp. 401. However, the question before this Court relates not to the scope but to the construction or interpretation of the patent claims, i. e., whether a given element is or is not included within the claim. Determination of the meaning of the patent claims can be made from the face of the instrument, as in a written contract. This involves questions of law for the Court, not of fact for a jury. Coupe v. Royer, 155 U.S. 565, 15 S.Ct. 199, 39 L.Ed. 263; Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437.

Emons, re-issue, No. 17,994, covers two types of spectacles, the rimmed type and the type without rims, known as rimless mountings. The defendant maintains that the rimless type of spectacle unit is defined in the Ful-Vue agreement as including a pair of end pieces and a pair of temples, and that the defendant is required as a condition of its license under the Smith and Emons patents to pay royalties in the sum of $246.06 on the temples and end pieces. Defendant further contends that since the temples and end pieces as such are not patented American Optical is using the patents to restrain competition in the marketing of unpatented articles. This contention is based upon a construction of claims 4 and 7 of the Emons patent

which includes lenses as an element, thus leaving end pieces and temples of the rimless type uncovered by Emons claims except in combination with other elements.

■ Such an interpretation is not sustainable. Rimless end pieces with stationary hinged means with inclined axes are covered by the claims whether or not the end pieces are combined with lenses. The end pieces represent the heart of the invention. They are so constructed as to be useful only when attached to a lens above the level of the eye in the completed spectacle. Mention of the lenses in the claims is for the purpose of providing a reference point for the meridians and the angle of the hinged axes. The lenses are not imported into the patented structure but merely serve as a medium for describing the position and function of the parts which are claimed. Reference to other parts of a claim for the purpose of describing operational techniques does not incorporate such parts as elements in the claimed structure. Williams Mfg. Co. v. United Shoe Machinery Corporation, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. This interpretation of the claims accords with the practice in the industry of selling the frames and mountings without lenses. Lenses are ground to individual prescription usually by wholesale distributors or ophthalmic dispensers.

■ Whether the temples are within the patent claims of the rimless type is immaterial. If the temples are within the claims and the lenses are not, there is no illegality in the exaction by the plaintiff of royalties thereon. If the temples are not within the claim, i. e., if they merely describe the operation of the hinged means, there is still no illegality. Computation of royalties on this basis is to adopt a convenient unit of measurement. Total royalty payments are not increased, and no royalties are exacted on unpatented temples, if they are in fact unpatented. Royalties payable under a patent license agreement may be measured by the sales of the completed units contemplated to be manufactured under the patents involved whether or not such sales include items not embodied in the patent claims. Ohio Citizens Trust Co. v. Air-Way Electric Appliance Corporation, D.C., 56 F.Supp. 1010, 1012.

■ The defendant's position regarding Uhlemann patent No. 2,108,875 is also not supportable. Under the terms of the Numont license New Jersey Optical may utilize not only Uhlemann No. 2,108,875, but also Uhlemann Nos. 2,164,557 and 2,188,380. The claims of the latter two patents cover an ophthalmic lens mounting without lenses. The lenses are not elements in the claims but are referred to as a means of describing the function and position of the claimed elements. Whether Uhlemann patents Nos. 2,164,557 and 2,188,380 have any bearing on the constructions manufactured by the defendant under the Numont license presents an issue of fact not properly disposable on a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, authorizes the court to enter summary judgment only if it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this rule the court's function is not to decide such factual issues, but to determine whether there is an issue of fact to be tried. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016. All doubts as to the existence of such issues are to be resolved against the moving party. Fishman v. Teter, 7 Cir., 133 F.2d 222; Toebelman v. Missouri-Kansas Pipe Line Co., supra. A motion for summary judgment is not to be taken as a convenient substitute for a trial on the merits.

■ There remains for consideration the territorial restrictions in the Ful-Vue agreement on the sale by the defendant of the inventions covered by the patents in England, North Ireland, France and Germany. The owner or holder of exclusive patent rights to make, use and sell may carve out of his grant a limited monopoly for a licensee. There is no doubt that a patentee may place territorial restrictions on licenses within the limits of the United States. It seems equally clear that the patentee is free to reserve for himself the advantages of competing in foreign countries by retaining the exclusive right of access to these markets. Dorsey Revolving Harvester Rake Co. v. Bradley Mfg. Co., Fed.Cas. No. 4,015, 7 Fed.Cas. 946, cited with approval, General Talking Pictures Corporation v. Western Electric Co., 304 U.S. 175, 181, 58 S.Ct. 849, 82 L.Ed. 1273. No case has been brought forward to shake the authority of this decision.

The motion for summary judgment is denied.