## MONTMARQUET v. JOHNSON & JOHNSON.

Civ. No. 9220.

United States District Court
D. New Jersey.

Feb. 4, 1949.

Harry B. Rook, of Newark, N. J. (J. T. Basseches, of New York City, of counsel), for plaintiff.

Kenneth Perry, of New York City (William J. Barnes, and George H. Lorch, both of New York City, of counsel), for defendant.

FORMAN, District Judge.

Plaintiff, Francis H. Montmarquet, doing business as The O. C. Manufacturing Company, alleged that defendant, Johnson & Johnson, infringes the plaintiff's patent No. 2,301,066 for an athletic supporter (jock strap) issued November 3, 1942. Plaintiff sought the usual injunctive and accounting relief. In answering the defendant denied the validity of the plaintiff's patent and infringement of the same. It asserted a counterclaim for a declaratory judgment on the ground that the patent is invalid and not infringed. Plaintiff's reply to the counterclaim admitted the existence of a controversy but denied the principal allegations of the counterclaim. Following a pretrial conference, the defendant filed the present motion for a summary judgment under Rule 56(b) Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that there is no genuine issue as to any material fact, and that defendant is entitled to judgment because the patent is invalid and not infringed as matters of law.

The plaintiff opposed the motion on grounds that there are triable issues of fact (1) whether Johnson patent No. 1,155,659 is an analogous art; (2) whether Cartledge British patent No. 494,393 complies with the requirements of valid anticipation; and (3) whether the present interpretation of the British Cartledge patent No. 494,393 is hindsight.

A comprehensive description of the alleged patent and pertinent prior art may best be obtained by a reference to the following illustrations extracted from the

letters patent upon which they appear. Numbers referred to will be found upon the illustrations.

Athletic supporters usually comprise three elements, viz., a belt or waistband (Fig. 3), a pouch suspended from the front

## PATENT IN SUIT

## ALLEGED PRIOR ART PATENTS

MONTMARQUET 2,301,066
FILED—JUNE 19,1942
ISSUED—NOV. 3,1942

CARTLEDGE 2,137,130
1938

Fig.2.

Fig.3.

JOHNSON 1,155,659
1915

CARTLEDGE BRIT. PAT. 494,393
1938

of the belt (27 of Fig. 2), and leg or buttock straps extending from the bottom of the pouch to the belt (34 and 35 of Fig. 2). The belt may extend substantially horizontally around the body of the wearer, or as in the patent in suit, it may have a "drop front" which may be several inches lower than the back of the belt. This latter arrangement, following closely the contour of the wearer's hips and abdominal regions, is advantageous because of the tendency of the supporter to be displaced or "creep" during violent exercise causing discomfort to the wearer. The problem of "creep" was a difficulty faced by manufacturers of athletic supporters and its elimination is one of the primary objects of plaintiff's patent.

Plaintiff, in his affidavit, in opposition to the motion for summary judgment, stated that in 1929 in partnership with his brother, he purchased the O—C Manufacturing Company of Little Falls, New Jersey, which had manufactured athletic supporters since 1908. Plaintiff, in his capacity as partial owner, and since 1939 as sole owner, has devoted his entire time and attention to designing, manufacturing and selling specialty items, which are the products of his concern. He claimed

"That on October 1, 1940 Deponent [plaintiff] entered into an agreement with Johnson & Johnson, the Defendant in this case, whereby Defendant [sic], pursuant to an agreement with the patentee, John Joseph Cartledge, made and sold to Johnson & Johnson articles embodying the inventions of the Cartledge United States Patents Nos. 1,880,795, issued October 4, 1932 for Athletic Supporter, and 2,137,130 issued October 15, 1938, for A Suspensory. Simultaneously with this agreement John Joseph Cartledge entered into an agreement with Johnson & Johnson, the Defendant herein, whereby the latter secured the license to sell the inventions manufactured by Deponent under the aforesaid Cartledge patents. Deponent's concern, Cartledge and Johnson & Johnson proceeded under these agreements uninterruptedly until during the war period, when government restrictions were put into effect which controlled the use of materials, particularly those containing elastic.

"Up to at least 1942, Johnson & Johnson featured among its athletic supporters its Coach Trump, Coach Faultless, Coach Rugby, Coach Varsity * * * In no one of these forms was Deponent's invention employed, or the features now present in * * * the Trump Supporter, the Rugby Supporter, or Tuxedo Supporter, * * *.

"In 1943 Mr. Gerbic, Product Manager of supporters for Johnson & Johnson, asked Deponent to see what he could to toward improving and making practical a war model supporter called Coach Trump, which Mr. Gerbic supplied to Deponent, and which comprised a straight waistband made of knitted fabric without any elastic. At that interview Mr. Gerbic asked Deponent to see his Apex war model supporter * * *. Deponent supplied a sample of the same to Mr. Gerbic, which the latter tried out, and Mr. Gerbic was unrestrained in his compliments, and expressed complete satisfaction therewith, and asked for a license under Deponent's Patent No. 2,301,066. Mr. Gerbic followed this request by a letter dated May 18, 1943 which summarized the discussion between Deponent and Mr. Gerbic relative to giving Johnson & Johnson an exclusive license, with the privilege to be retained by Deponent also to manufacture under this patent.

"Thereafter the first knowledge of Johnson & Johnson's position came to Deponent when he procured on the open market a supporter called Johnson & Johnson Victory Athletic Supporter, which contained the following data on its package, Exhibit C—

" 'Two new principles-Waistband Control—V Front'

" 'Exclusive V front provides masculine support plus abdominal uplift.'

" 'Newly developed V front eliminates slipping

"This construction * * * followed the general form of Deponent's non-elastic war model by overlapping the apices to a greater degree than Deponent's war model, but more closely in accordance with other forms of Deponent's construction disclosed in Deponent's Patent No. 2,301,066 * * *.

The apices of the branches of the waistband were criss-crossed over the longitudinal axis of the pouch to secure a cross pull and inwardly to cup the pouch into form-fitting position about the organs.

"At the close of the war, when elastic fabric became available, the defendant herein came out with its Trump, Tuxedo and Rugby models * * *. A circular which Johnson & Johnson included with their Trump and Rugby supporters makes reference to '—the wonderful LIFT of the new V-Front * construction' with a footnote '* Patent Pending', and further sets forth the following 'First major improvement in athletic supporters in 50 years!' and that its construction

'—provides Upward as well as Inward support.' ' * * * the supporting pouch is held in proper position without wrinkling or bunching between the legs.' "

Plaintiff mailed notice of infringement to defendant on February 4, 1944. At the pretrial conference and subsequent correspondence between the parties the plaintiff designated the following claims of his patent No. 2,301,066 to be infringed by the defendant's products.

"1. An athletic supporter comprising a waistband or belt element of relatively wide webbing, the frontal portion whereof is defined by angularly directed branches formed of webbing material, said angularly directed branches defining a continuous edge common to both branches along an obliquely directed section transverse of the webbing, a sack or pouch, the upper edge of which is affixed to said continuous edge of said branches and leg straps connecting the lower portion of said pouch to said waistband."

* * * * * *

"6. In an athletic supporter comprising a waistband and a sack or pouch supported therefrom, the combination whereof having the waistband of relatively wide webbing formed adjacent the frontal portion thereof with angularly directed apices defining an edge co-terminous with the width of the upper edge of the pouch and to which said pouch is affixed.

"7. An athletic supporter in accordance with claim 6 wherein a portion of said webbing is formed of elastic fabric."

* * * * * *

"9. An athletic supporter comprising a waistband or belt element of relatively wide webbing, formed adjacent the front thereof into angularly directed branches, each of said branches having angularly directed edges, the apices of which overlap, defining an edge transverse to the groin and a pouch, the upper portion of which is affixed to the edge of said waistband aforementioned.

"10. An athletic supporter comprising the waistband, the frontal portion whereof is formed into downwardly and angularly directed branches following generally the lines of the groin, said branches terminating into mitred sections, the apices of which overlap and provide an edge transverse to the groin to which the pouch portion is affixed, the overlapping apices reinforcing the upper edge of said pouch and being coterminous with said edge."

* * * * * *

"12. An athletic supporter comprising a waistband or belt element of relatively wide webbing, the frontal portion thereof being downwardly directed providing spaced branches terminating in mitred edges, the apices of which overlap and define an edge substantially transverse to the groin and a pouch, the lower portion of which pouch having connected thereto leg straps affixed to the lower edge of said waistband in close adjacency to either side of said pouch."

In the illustration under the heading "Patent in Suit," Figure 2, the number 22 denotes the triangular section formed by the oppositely directed apices 20 and 21. The description of the patent in question states: "I form an angular or mitre fold 12 adjacent the mid portion thereof, forming branches 13 and 14, angularly directed towards each other and forming a straight edge 15 common to both branches, at an obtuse angle to the edge 16 and an acute angle to the edge 17 of the webbing."

Defendant urged that the fundamental teaching of the plaintiff's patent is a "drop

front" which plaintiff resisted by contending that such is excluded or disclaimed by the following statement from the plaintiff's patent: "In suspensory bandages or supports known to me, efforts have been made to provide comfort in attaching the sack to the supporting belt by suspending elements following generally the line of the groin. These devices being intended primarily to alleviate a distressed condition, were not designed for protection during violent exercises. Endeavors to accommodate such a device as known to me with angularly directed groin conforming supports involved intricate braces and straps which introduced elements of cost with regard to workmanship and materials."

Plaintiff pointed out that his patent teaches that: " * * * by attaching the belt webbing at an angle, to have the apices overlapping and crisscrossed over the longitudinal axis of the pouch, a cross pull is effected, tending to cup the pouch into a form fitting position about the organs and the pubis."

Plaintiff expressed the object of his invention to "provide an athletic supporter in which a pouch member is supported by a relatively wide webbing and in which comfort and protection are provided, without displacement during exercising. Further objects of my invention reside in the provision of an athletic supporter or jock strap made of relatively wide webbing, in which the pouch member is supported without any tendency to 'creep' or be displaced, with a consequent discomfort in the crotch, and without any tendency of the pouch member to collapse and bind within the crotch, assuring an envelopment of the organs with proper support, avoidance of accidental displacement, while retaining simplification of construction and materials, to effect great economics in workmanship and materials."

Defendant contended that all of the objects and teachings of the plaintiff's patent have been anticipated by the prior art, specifically, Cartledge United States patent 2,137,130 and Cartledge British Patent 494,-393. Defendant claimed Johnson Patent No. 1,155,659 for a catamenial belt further anticipated the so-called "overlapping apices". Plaintiff resisted the defendant's contention of anticipation in the Cartledge British patent and insisted that triable issues of fact were present since foreign patents to be anticipation should not require experimentation, and that patents must be clear and definite to constitute anticipation where they have not been reduced to commercial practice. He claimed that it must be determined how much of the defendant's construction was derived from the plaintiff's contribution to it and not from the Cartledge British patent as a triable issue of fact which in itself provided a basis for refusing summary judgment. As to the Johnson patent for catamenial belts, plaintiff urged that the question whether the transfer of a device from one art to another and adaption to use therein involved a patentable invention is a question of fact presenting an additional triable issue.

Available on this motion for summary judgment is the file wrapper of the plaintiff's patent No. 2,301,066 alleged to be infringed; exhibits of the alleged infringing supporters manufauctured by the defendant; exhibits of the plaintiff's product; the letters patent upon which the defendant relies in his defense of invalidity; and the plaintiff's affidavit in opposition to the motion for summary judgment.

■■■■ On a motion for summary judgment, the function of the court is to determine whether an issue of fact is present and not to determine any fact which appears to be in issue. Frederick Hart & Co., Inc., v. Recordgraph Corporation, 3 Cir., 169 F.2d 580. In the absence of triable issues of fact, there is no reason for not granting a motion for summary judgment in patent cases where infringement is charged, Rubinstein v. Silex Co., D.C., 73 F. Supp. 336; Steigleder v. Eberhard Faber Pencil Co., D.C., 81 F.Supp. 143; or invalidity of the patent is claimed, Juniper Mills, Inc., v. J. W. Landenberger & Co., D.C., 6 F.R.D. 463; John T. McCoy, Inc., v. Schuster, D.C., 44 F.Supp. 499.

In United States v. Esnault-Pelterie, 303 U.S. 26, 30, 58 S.Ct. 412, 414, 82 L.Ed. 625, it was stated that: "We are not unmindful of the rule that where, with all the evidence before the court, it appears that no substantial dispute of fact is pre-

sented, and that the case may be determined by a mere comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the question of invention and infringement may be determined as questions of law."

In Young v. Ralston-Purina Co., 8 Cir., 88 F.2d 97, 101, it was stated that " * * * When it appears, in a patent infringement suit, that extrinsic evidence is not needed to explain the terms of art involved and the court is able, from mere comparison, to comprehend what the invention described in a patent is, and, from a mere comparison of the structures, to determine whether one device infringes on another, the question of infringement or no infringment is one of law."

It must be conceded that all the physical evidence which is material to a decision in this case is before the court. The plaintiff suggests that the testimony of an expert is essential to the determination of the fact issues. He has had long experience in the manufacture of the product in suit and his affidavit is before the court. No further opinion testimony is necessary in the light of the clear and uncontroverted factual basis that is available and ready for a legal conclusion to be applied to it. Hence, plaintiff's objection to a final disposition of the case on the defendant's motion for summary judgment must be overruled.

Turning attention now to the merits of the motion it is found that in the plaintiff's application for the patent, he originally framed his claim 1 as follows: "An athletic supporter comprising a waistband or belt element of relatively wide webbing, the frontal portion whereof is defined by angularly directed branches defining a continuous edge common to both branches, a sack or pouch, the upper edge of which is affixed to said continuous edge of said branches and leg straps connecting the lower portion of said pouch to said waistband."

The patent examiner rejected this claim as being fully met in terms by Cartledge

British patent No. 494,393 but allowed all the other claims. Thereupon plaintiff amended claim 1 by adding after the words "common to both branches" the following: "along an obliquely directed section transverse of the webbing."

On this amendment claim 1 was granted. Plaintiff insisted that the amendment did not limit the original claim but merely clarified what is inherent in the patent's structure. He urged that "a continuous edge common to both branches inherently is along an obliquely directed section transverse of the webbing where formed by angularly directed branches which overlap."

The Cartledge British Patent No. 494,-393 specifies that:

"In the drawing, 1 denotes the belt of the suspensory consisting of a longitudinally elastic band of fabric and adapted to snugly fit around the waist and above the hip-bones *but lowering in the front of the body from points above the hip-bones. It lowers in the front until its lowest point is at the middle where its ends are joined after being tailored to conform to the proper angle as shown in the drawing.*"

 * * * * * *

"Of course, joint 2 need not necessarily be the ends of the band, for, though not preferred, *the angle may be provided by a fold while the ends may meet anywhere around the body. Again the belt may consist of numerous pieces and even be provided with adjustment devices.*"

 * * * * * *

"From the above it will be seen that the waistband will follow around the waist in a horizontal plane from the back to the hip-bones, whence it will descend on each side to hold the pouch piece in a lower plane. *For proper lift, to permit free respiration, and for comfort, the front part of the support must be substantially low, and to attempt to hold the front part of the support without angular joints as shown will draw the band over the hip bones, resulting in a loose, unsteady and very uncomfortable fitting.*" (Italics supplied.)

The Cartledge British patent is to be measured as anticipatory not by what might have been made out of it but what

is clearly and definitely disclosed by it. Griscom-Russell Co. v. Westinghouse Electric & Mfg. Co., 3 Cir., 121 F.2d 680, 682; Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, 1003. The test of anticipation of a foreign patent is set forth in Hoddersen-Balling v. Lorenz, 2 Cir., 60 F.2d 709, 710 as follows: "It is true that to be an anticipation the disclosure of a prior patent, even a domestic patent, must be clear, and we may assume from present purposes that the rule must be more strictly applied to foreign than to domestic patents. Cf. Trussell Mfg. Co. v. Wilson-Jones Co., 2 Cir., 50 F.2d 1027, 1029. Nevertheless, if the descriptions and drawings of a foreign patent disclose the invention in terms so full and clear as to enable a person skilled in the art to practice the invention without making experiments, then it will be a complete anticipation."

■ The claims of a patent are always to be read or interpreted in the light of its specifications, Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132, and the patentee is not confined to a particular mode of use, since the claims of the patent, not its specifications, measure the invention. "While the claims of a patent may incorporate the specifications or drawings by reference, see Snow v. Lake Shore & M. S. R. Co., 121 U.S. 617, 630, 7 S.Ct. 1343, 30 L.Ed. 1004, and thus limit the patent to the form described in the specifications, it is not necessary to embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced to practice. It is enough that the principle claimed is exemplified by a written description of it and of the manner of using it 'in such full, clear, concise, and exact terms' as will enable one 'skilled in the art to make, construct, compound and use the same.'" Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721.

Nor is the court required to close its eyes to matters of common knowledge or use. Friend v. Burnham & Morrill Co., 1 Cir., 55 F.2d 150, 151. In interpreting the Cartledge British patent before the court, no expert opinion or experimentation is required in view of its clarity.

Neither the plaintiff nor the patent examiner gave sufficient significance to the disclosure made in the Cartledge British patent which specified that: "joint 2 need not necessarily be the ends of the band, for, though not preferred, the angle may be provided by a fold while the ends may meet anywhere around the body. Again the belt may consist of numerous pieces and even be provided with adjustment devices."

The Cartledge British patent disclosed that by folding the band in front of the wearer as illustrated in Figure 3, that the supporter would have a band identical with that of the plaintiff's and there would result the overlapping apices, criss-crossed over the longitudinal axis of the pouch whereby a cross pull is effected tending to cup the pouch into form fitting position about the organs and the pubis in the same manner as the plaintiff contended is the fundamental teaching of his patent. In addition, there would be the "V front" and a "horizontal edge" common to the band, the branches thereof, and the pouch precisely as the plaintiff contended is inherent in his patent.

It is significant that in all six different belt arrangements illustrated by the plaintiff in his patent, the pouch is attached to a straight horizontal edge, common to both portions of the belt front, whether formed by a fold or an overlap.

■ Plaintiff and his workmen had long years of experience in the manufacture of supporters. Many of them were spent in intimate association with the Cartledge patents, British No. 494,393 and United States No. 2,137,130. Plaintiff manufactured supporters for the defendant under a license from Cartledge. He could hardly be otherwise than trained and familiar with developments in the art and of its problems most particularly as they were embodied in the Cartledge patents with which he worked. The disclosures of the Cartledge patents were equally exposed to the plaintiff and defendant and in their supporters both have made use of the contribution the Cartledge British patent afforded to the art. In achieving the fold, the plaintiff applied no more than mere me-

chanical skill in following the disclosures of the Cartledge British patent. The application of mechanical skill as evidenced by plaintiff to obtain a known objective is not sufficient to rise to the level of invention. Wolf v. Western Electric Co., Inc., 3 Cir., 143 F.2d 131; Donner v. Sheer Pharmacal Corporation, 8 Cir., 64 F.2d 217, 221, certiorari denied 290 U.S. 658, 54 S. Ct. 73, 78 L.Ed. 570; Altoona Publix Theatres v. American Tri-Ergon Corporation, 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005.

 Although the Cartledge British patent clearly anticipates the plaintiff's patent, the finding of lack of invention need not be based upon it alone. The drawing, specifications and all claims in the Johnson patent No. 1,155,659 issued in 1915 called for a belt arrangement conforming to the contour of the body from which was to be suspended a means for a functional purpose for women very similar to the body conforming belt in issue here and designed for suspension of a means for a functional purpose in men. Plaintiff objected that the Johnson patent is a non-analogous art and that this raises a fact issue which can only be decided at the trial. There is no merit to this objection. It is apparent from a view of the drawing of the Johnson patent that its purpose is identical with the belt of the supporters in issue in that it is the medium from which is suspended a means designed to fit between the legs of the wearer, the belt performing in each the same function but the suspended means serving a different use. In Butler Manufacturing Co. v. Enterprise Cleaning Co., 8 Cir., 81 F.2d 711, 716 it was stated that:

" 'In determining whether device covered by patent involves patentable invention or merely exercise of ordinary mechanical skill, patentee is conclusively presumed to be thoroughly familiar with existing state of the art,' and 'the transfer of a device from one art to another does not amount to invention, where it performs the same function in both, without any change in form to adapt it to the new use.' "

The Johnson patent disclosed in a body conforming belt a horizontal straight edge produced by a fold in the material. In view of it the idea of overlapping, apices, crisscrossed in front of the body is old.

 Plaintiff further objected to consideration of the Johnson patent on the ground that validity and invention of his patent over it may be inferred from its dormancy for over thirty years and cited Worthington Pump & Machinery Corporation v. Clark Brothers Co., D.C., 17 F.2d 189, 191. The reference in the Worthington case is based on the statement made by the United States Supreme Court in the case of Magowan v. New York Belting & Packing Co., 141 U.S. 332, 343, 12 S.Ct. 71, 76, 35 L.Ed. 781 as follows: "It is remarked by Judge Nixon in his opinion, as a fact not to be overlooked, and having much weight, that the Gately packing went at once into such an extensive public use as almost to supersede all packings made under other methods, and that that fact was *pregnant evidence of its novelty, value and usefulness*." (Italics supplied.)

The relationship of this statement and the facts and circumstances of the case before us is too remote to give it any application.

 Plaintiff charged that after the defendant saw his device it widely advertised a similar supporter which it characterized as " * * * not merely a new design— but a radical step ahead in supporter utility."

It also notified that it had a patent pending. Nevertheless defendant gave as a reason for not exercising its option to take a license from the plaintiff the ground that a search had revealed that the plaintiff's structure was old. In effect, plaintiff urges, defendant's conduct and advertisements estopped it from relying upon the defense of anticipation. In Reidenbach v. A. I. Namm & Sons, D.C., 25 F.Supp. 235, 238, affirmed 2 Cir., 99 F.2d 1013 it was stated that:

"To be sure defendants apparently had, and have, the usual idea that they had something new in their garment and have applied for a patent accompanied by the usual advertising campaign calling attention to their product with such words as 'amazing', etc. But that does not prevent them from defending this suit. Paramount Publix Corporation v. American Tri-Ergon Cor-

poration, 294 U.S. 464-476, 55 S.Ct. 449, 79 L.Ed. 997.

"As was stated in the above case, 'such inconsistency affords no basis for an estoppel, nor precludes the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention.' "

So in this case, the inconsistency charged by the plaintiff constitutes no basis for precluding relief from the charge of infringement.

■■■ Plaintiff's patent No. 2,301,066 must be held to be invalid and in such light it cannot be said that defendant has infringed it. An examination of plaintiff's patent, the Cartledge British patent and the physical specimens of plaintiff's and defendant's devices, leads to the conclusion that both plaintiff and defendant have borrowed generously from the Cartledge British patent, an old skill well known in the art.

Therefore defendant's motion for a summary motion in its favor on the ground that plaintiff's patent No. 2,301,066 is invalid, is granted. Upon such a holding defendant's counterclaim for a declaratory judgment that plaintiff's patent is invalid raises no issue not disposed of in the summary judgment and it should be withdrawn or dismissed.

An order should be settled in conformity with this opinion.