Benjamin **MESSING**, Harry Jacobs and The Jason Corporation, Plaintiffs,

v.

**QUILTMASTER CORPORATION,** Defendant.

Civ. A. 177–57.

United States District Court D. New Jersey.

Feb. 21, 1958.

William A. Kaufmann, Hoboken, N. J., and Fish, Richardson & Neave, New York City, by Henry R. Ashton, Harry R. Pugh, Jr., and Ronald F. Ball, New York City, for plaintiffs.

Norman N. Popper, Newark, N. J., for defendant.

WORTENDYKE, District Judge.

The court's jurisdiction rests upon 28 U.S.C. § 1338(a). The action is for an injunction against further alleged infringement of patents nos. 2,621,138 (138) and 2,621,139 (139) issued to plaintiff Benjamin Messing on December 9, 1952 upon applications filed February 21, 1950. Plaintiffs Messing and Jacobs claim ownership of the patents and The Jason Corporation is alleged to be a licensee thereunder. In addition to injunctive relief, plaintiffs seek an accounting and judgment for profits, etc.

We are immediately concerned only with patent 138, with respect to which defendant has moved for summary judgment of invalidity under Fed.Rules Civ. Proc. Rule 56(b), 28 U.S.C. The claimed invalidity is rested upon the contention that the patentee was not entitled to the patent in suit because the claimed invention was described in a patent granted on an application for patent by another, filed in the United States, before the invention thereof by the applicant for the patent in suit. In short, defendant charges that the patent in suit fails to meet the condition for patentability prescribed in 35 U.S.C. § 102(e). Specifically, defendant contends upon its present motion that the patent in suit is invalid because the invention therein described was anticipated by patent no. 2,525,355, issued to Hoyler on October 10, 1950 on an application filed February 27, 1943, not referred to in the patent in suit, and which defendant claims was overlooked by the Patent Office. Defendant presently asks the court, without any extrinsic evidence, and upon the basis of a mere comparison of the patent in suit with that of Hoyler, to determine that the patent in suit is invalid for lack of invention. Defendant cites Slagboom v. Van Vlaanderen Machine Co., D.C.N.J. 1956, 139 F.Supp. 785, and Glatt v. Sisco, D.C.N.J.1956, 136 F.Supp. 936, decisions respectively of Judge Meaney and of the late Judge Modarelli of this court, as precedents for the action which movant would have this court take upon this motion.

Patents were declared invalid on motions for summary judgment in Montmarquet v. Johnson & Johnson, D.C.N.J. 1949, 82 F.Supp. 469, affirmed per curiam 3 Cir., 1949, 179 F.2d 240, certiorari denied 1950, 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1384, and in W. E. Plechaty Co. v. Heckett Engineering Inc., D.C. Ohio 1956, 145 F.Supp. 805. In Montmarquet, 82 F.Supp. at pages 474–475, Chief Judge Forman relied upon the rule recognized in United States v. Esnault-Pelterie, 1938, 303 U.S. 26, 58 S.Ct. 412, 82 L.Ed. 625:

"'* * * that where, with all of the evidence before the court, it appears that no substantial dispute of fact is presented, and that the case may be determined by a mere

comparison of structures and extrinsic evidence is not needed for purposes of explanation, or evaluation of prior art, or to resolve questions of the application of descriptions to subject-matter, the question of invention and infringement may be determined as questions of law.' "

The court then states, 82 F.Supp. at page 475:

"It must be conceded that all the physical evidence which is material to a decision in this case is before the court. * * * No further opinion testimony is necessary in the light of the clear and uncontroverted factual basis that is available and ready for a legal conclusion to be applied to it."

■■ The validity of the patent in suit is presumed. This presumption is not an idle factor, * * * but is a positive factor which must be overcome by one who asserts invalidity. Artmoore Co. v. Dayless Mfg. Co., Inc., 7 Cir., 1953, 208 F.2d 1, 3, certiorari denied 1954, 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075, (citing, Radio Corp. of America v. Radio Engineering Laboratories, 1934, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 and Mumm v. Jacob E. Decker & Sons, 1936, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983). The court is not asked to look further than the Hoyler and Messing patents for the basis upon which to determine the issue of validity raised by the pleadings. However, in order to determine patent validity upon this motion, " * * * the court must be certain that it does not need any expert testimony or other extrinsic evidence to explain or evaluate the prior art, or to explain the application of complicated patent descriptions to the subject matter of the patent so that by a mere comparison of the patent in suit with the prior art patents the court can comprehend the similarities or differences in the patents, invalidity for lack of invention being so clearly apparent on the face of the patent that no testimony could change that conclusion." Glatt v. Sisco, supra, 136 F.Supp. at page 937, (citing, Montmarquet v. Johnson &

Johnson, supra, Baker v. Webb, D.C.Or. 1953, 112 F.Supp. 394 and Chiplets, Inc., v. June Dairy Products Co., D.C.N.J. 1950, 89 F.Supp. 814). In Mas v. Owens-Illinois Glass Co., D.C.N.J.1954, 122 F.Supp. 582, Judge Meaney of this Court granted a motion for summary judgment in a case involving a patent covering the design of bottles, but the issue raised by the motion was that of infringement, and, moreover, the court decided the motion upon exhibits illustrating the prior art, the patent references, and the file wrappers, as well as upon pleadings and affidavits of the parties.

■ It is not my function on this motion to decide disputed issues of fact, but only to determine whether there is an issue of fact to be tried, and all doubts as to whether a genuine issue of fact exists must be resolved against the moving party. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016, American Optical Co. v. New Jersey Optical Co., D.C.Mass.1944, 58 F. Supp. 601 (citing, E. W. Bliss Co. v. Cold Metal Process Co., D.C.Ohio 1942, 47 F.Supp. 897 and Weil v. N. J. Richman Co., D.C.S.D.N.Y.1940, 34 F.Supp. 401). In American Optical, supra, the action was for the recovery of unpaid royalties under certain patent license agreements in which the defendant alleged invalidity of the patents. Defendant's motion for summary judgment was based upon the claims that the illegality of the license agreement sued upon was apparent on the face of the complaint. In denying the motion, the court construed the license agreements as legal, saying 58 F.Supp. at page 605:

"In the usual infringement case where the validity or scope of the patents is in issue the question cannot be decided without the aid of expert testimony and reference to file wrappers and prior art. Such an issue is not rightly disposed of by summary judgment (citing cases). However, the question before this Court relates not to the scope but to the construction or interpretation of the patent claims, i. e., whether a given element is or is not included within the claim. De-

termination of the meaning of the patent claims can be made from the face of the instrument, as in a written contract. This involves questions of law for the Court, not of fact for a jury."

Keeping in mind the now statutory principle (35 U.S.C. § 282) that a patent shall be presumed valid and that the burden of establishing its invalidity rests upon the party asserting it, we proceed to examine the Hoyler patent, upon which defendant relies, for the purpose of determining whether or not it so clearly anticipates the Messing patent as to leave no issue of fact which could overcome the presumption of Messing's validity. In order to constitute anticipation, the disclosure of Messing by Hoyler must be clear. Allied Wheel Products, Inc. v. Rude, 6 Cir., 1953, 206 F.2d 752.

In determining whether Hoyler anticipates Messing, the specifications and drawings as well as the claims of the former may be considered in comparison with the claims of the latter. Suczek v. General Motors Corp., 6 Cir., 1942, 132 F.2d 371. It is, of course, unnecessary to the invalidation of a patent for want of invention that a complete anticipation thereof be disclosed in a single prior patent. Westinghouse Electric Corp. v. Bulldog Electric Products Co., D.C.W.Va. 1952, 106 F.Supp. 819, affirmed 4 Cir., 1953, 206 F.2d 574, certiorari denied 1953, 346 U.S. 909, 74 S.Ct. 240, 98 L.Ed. 406. However, defendant on its present motion has elected to stand or fall upon Hoyler as a prior description of Messing's patent.

Plaintiff concedes that the present motion poses the single question whether the alleged invention defined in the claims of the patent in suit is "described in the copending patents to other inventors cited by defendant." In considering this question we are reminded by plaintiff that "* * * a patent speaks as an anticipation from the date of its issue and not from the date of the application." East Rutherford Syringes, Inc., v. Omega Precision Medical Instrument Co., D.C.N.J.1957, 152 F.Supp. 497,

501, and that "* .* * in order for the prior applicant to be the first inventor, his patent application must actually disclose the thing patented to a later appli-cant" (Baltimore Paper Co. v. Oles Envelope Co., D.C.Md.1936, 13 F.Supp. 951, 955, affirmed 4 Cir., 1937, 89 F.2d 279).

The issuance of the Hoyler patent on October 10, 1950 antedated that of Messing on December 9, 1952. Hoyler's application was filed February 27, 1943, while that of Messing was filed February 21, 1950.

Plaintiff cites the following respects in which he would distinguish claim 2 of the patent in suit from the disclosures of the Hoyler patent:

(1) Messing teaches a method of forming laminated quilted material, while Hoyler does not mention quilting.

(2) Messing provides for the interposition of padding between thermoplastic sheets, while Hoyler described as a fabric reinforcing strip the material which he would interpose between such thermoplastic sheets.

(3) In contrast with Messing's disposition of a sheet of heat-insulating, non-fusible fiber glass material outside of his thermoplastic sheets, Hoyler makes no reference to the use of insulating material outside the thermoplastic sheets when some third material is between the sheets, nor does he specify that such insulating strips as he employs should be non-fusible. Hoyler even contemplates that his insulating strips may be of the same material as that of the sheets to be bonded.

(4) While both patents teach passage of sheets to be bonded, under pressure, between electrodes terminating a high-frequency current source, Messing calls for the application of such pressure at spaced intervals, while Hoyler fails to indicate such spaced-interval pressure in instances where any third material is used between the sheets to be bonded.

(5) Messing's process contemplates the bonding of the two sheets through interposed padding, while Hoyler mentions no such padding.

Defendant, on the other hand, emphasizes what he contends are substantial similarities between the disclosures of Hoyler and Messing respectively. Both recognize the tendency for arcing between the electrodes and consequent scorching of the materials to be bonded. To counteract this tendency, each inventor provides for the interposition of dielectric strips or heat-insulating sheets between the electrodes and the near surfaces of the materials to be bonded. While Messing uses a sheet of cotton, wool or any desired fibrous material between the thermoplastic sheets, Hoyler places a layer of fabric or other suitable non-thermoplastic material as a filler in a corresponding position between the thermoplastic sheets. Both patents use rollers for electrodes. The outer sheets are bonded at intervals by fusing their thermoplastic substance through the "wadding" in Messing's patent and the interstices of the "reinforcing" fabric in that of Hoyler.

Hoyler and the Messing patent 138 here in suit were method patents. That of Hoyler is entitled "Method of Bonding Materials Electrically" while that of Messing, 138, is entitled "Method of Forming Laminated Quilted Material." The opening paragraph of the Hoyler specifications states that the invention relates to a method of bonding materials electrically, and more particularly to electronic apparatus for sealing together two or more parts or layers of material, at least one of which is thermoplastic in nature and is rendered tacky when heated. Messing describes his invention as relating to a method of laminating flexible sheet material such as sheets of plastic material, pointing out that the laminated material comprises outer sheets of thermoplastic material and an intermediate layer of suitable padding or wadding. In order to maintain the shape and condition of the padding between the sheets and outer covers it is secured at spaced intervals by fusing the outer sheets through the intermediate layer of padding, material by welding or bonding the plastic sheets through the intermediate layer which is accomplished by positioning the material between electrodes and exerting pressure on the material and passing a current of electricity through the sheets and intermediate layers. Among the objects of his invention, as described by Hoyler, is that of providing an improved method of an apparatus for heat sealing two or more sheets, of which at least one is rendered plastic and tacky when heated to a certain temperature, whereby the heat applied to the work will be concentrated in or confined very largely to the regions of the parts contiguous to the contacting surfaces thereof. He teaches that *the bonding of the materials can be effected in the manner above described either along a continuous seam or along a broken seam as may be desired, and that parts of any desired form or configuration can be readily bonded together.* He suggests that his method lends itself to various fields of use, such as clothing manufacture, the packaging industry, and the manufacture of inflatable articles. Hoyler explains that he makes use of a high frequency electric field for developing heat in the parts to be bonded together at least one of which is preferably a dielectric material which becomes plastic when heated to a certain temperature. The material to be bonded together is passed between one or more pairs of cooperating electrodes terminating a high frequency oscillation generator which sets up between the electrodes a high frequency electric field which heats the thermoplastic material to plasticity by reason of the dielectric losses therein. He points out that these electrodes may be in the form of heat conductive rollers of such mass that they can conduct away, through the outer surfaces of the contacting layers to be bonded together, the heat developed therein in a region remote from the contacting surfaces thereof. Hoyler reminds us that occasionally the material to be bonded is such that arcing may take place through it between the two electrodes. This arcing problem is dealt with by Hoyler by feeding the materials to be bonded past the electrodes between

strips of dielectric material. Hoyler also teaches that the employment of this measure reduces the tendency for arcing as well as the tendency for the heat to flow out of the layers of the material to be bonded, and minimizes deformity in the layers to be bonded by providing a seal or seam of greater strength. This causes the tacky portions of the materials to be bonded to flow into the interstices of the fabric between them, resulting in a union of the materials to be bonded as well as the union of each to the intervening fabric. Hoyler also describes bonding by continuous or discontinuous seams through the use of a succession of "spot welds" running lengthwise as well as transversely of the strips or sheets of material to be bonded.

Messing also recognizes the tendency for the electrodes in his process to arc and for the plastic material to be bonded to be burned or scorched. He describes as the salient object of his invention that of providing a method of laminating plastic material by fusing the material of the laminations in such a way that the electrodes used in fusing the plastic sheets will not arc and the material will not be scorched or burned, and describes his invention as providing *a novel method of and appartus for forming designs on compressed portions of the laminated sheets, and for laminating plastic sheets by fusing them at spaced intervals* through a layer of padding in such a manner as to dissipate the heat during the operation of the process.

Thus, Hoyler's primary objective is the electrical bonding of two or more sheets of thermoplastic material. Messing's primary objective is the lamination of plastic material by passing a current of electricity through the layers to be bonded. Each of these patentees recognizes the tendency of the electrodes, by means of which the heat used to weld the materials is transmitted through them, to arc, thereby burning or scorching the materials being treated. Hoyler overcomes this tendency by running the materials to be bonded between strips of dielectric material lying between each

electrode and the near surface of the plastic material to be bonded. Messing uses a similar expedient to prevent the arcing. Messing employs padding or wadding to achieve a quilted effect between the laminated thermoplastic sheets. Hoyler suggests that his invention may be utilized by reinforcing one or more thermoplastic layers with one or more non-thermoplastic layers by the use of a strip or layer of fabric or other suitable non-thermoplastic material interposed between the thermoplastic sheets to be bonded, and teaches that the heat created in the field between the electrodes causes the thermoplastic sheets to become plastic and tacky at the locations of the application of the heat, such tacky portions of the plastic flowing into the interstices of the interposed fabric uniting the three layers. A similar result is described in Messing's specifications as follows:

"This high frequency current generates heat in the sheets * * * (to be laminated) * * * and fuses the sheets at spaced intervals through the layer * * * of wadding. This intermediate layer thereby becomes imbedded in the sheets of thermoplastic material and these sheets are securely fused or bonded by the heat and pressure applied through the rolls * * * (and electrodes)."

The use of heat and pressure upon multiple layers of fusible fabric and wadding to achieve a quilted effect upon the external surface of the finished product was taught as long ago as August 3, 1875, in patent no. 166,262 issued to Corwin. Reference is made to this early patent in the Hoyler and in the Messing patents respectively. As is clearly recited by Hoyler, in his specifications:

"It has been known heretofore to bond together two or more layers of thermoplastic material by the use of heat * * * (and) To effect a suitable bond it is necessary that the heat penetrate through the layers to the contacting surfaces of the materials so that these surfaces will be-

come plastic. Obviously, if the heat is applied to the several layers through the external surfaces thereon in a degree or quantity sufficient to render the contacting surfaces thereof plastic, the relatively outer portions of these layers also become sufficiently hot to render them plastic, and even hotter."

Despite his reference to Corwin, Messing makes no recital corresponding to that of Hoyler. Imitation quilted goods were well known prior to Corwin, who recites that his invention relates to improvements in imitation quilted goods, pointing out that:

"According to the ordinary processes imitation quilted goods are produced by first coating or covering the back of the fabric, which forms the external surface of the finished goods, with india-rubber cement, or a sheet of india-rubber, over which a layer of wadding or material is arranged. The layers of fabric india-rubber and wadding are then placed between heated embossing-rollers, the surfaces of which are so constructed as to raise and depress the whole face of the fabric according to the pattern to be produced."

I can detect no substantial difference between the teachings of Hoyler and Messing except that Messing inferentially employs the padding or wadding interposed between the thermoplastic materials to be laminated for the purpose of achieving a quilted effect, while Hoyler suggests the interposition of fabric or other non-thermoplastic material between the thermoplastic materials to be bonded for the purpose of reinforcing the thermoplastic layers. In each instance, however, where the interposed material is employed, the bonding takes place between the outer thermoplastic sheets and through the interposed fabric or wadding. Hoyler's method of a succession of spot welds, running longitudinally or transversely of the thermoplastic materials to be bonded was available and intended to create a stitching effect, an inseparable characteristic of hand-sewn, machine-sewn and imitation quilting.

An invention may be present if an element or elements previously known are combined in such a way with other elements either new or old as to produce an entirely new and useful result or function, and invention rests in the novel result produced by the combination, a result which is entirely separate from the service performed by any or all of the elements or by a mere aggregation of them. Where the elements of a combination are not united so as to produce a new and useful result which is the simultaneous or successive product of all the elementary parts so acting as a single entity, there is no invention. Griscom-Russell Co. v. Westinghouse Electric and Mfg. Co., 3 Cir., 1941, 121 F.2d 680.

A patent claim is not limited by the particular mode of use described in the specifications, since the claims of the patent, not its specifications measure the invention. Smith v. Snow, 1935, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721. While the specification may be referred to to limit a patent claim, it can never be made available to expand it. Darsyn Laboratories, Inc., v. Lenox Laboratories, Inc., D.C.N.J.1954, 120 F.Supp. 42, affirmed per curiam 3 Cir., 1954, 217 F.2d 648, certiorari denied 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253. However, novelty may be negatived by full description in the specifications of a prior patent, of the subject covered by the patent in suit, notwithstanding that the subject was not covered by any of the claims of the prior patent. Micon v. Burton-Dixie Corp., 7 Cir., 1945, 147 F.2d 19; Suczek v. General Motors Corp., supra. Both Corwin and Hoyler may be considered in passing upon the validity of the Messing patent, since anticipation, if any, is not dependent upon Hoyler alone. Westinghouse Electric Corp. v. Bulldog Electric Products Co., supra. It is nevertheless necessary that all the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in

substantially the same way in order to anticipate an invention. Smith v. Snow, supra; Allied Wheel Products Co., Inc., v. Rude, supra.

■■■■ The situation disclosed on the present motion is strongly suggestive of that in Celanese Corp. of America v. Ribbon Narrow Fabrics Co., D.C.S.D. N.Y.1940, 33 F.Supp. 137, affirmed 2 Cir., 1941, 117 F.2d 481. In that case the claims were for a method of cutting fabric made of thermoplastic or organic derivatives of cellulose so that the cut edges would not fray or ravel. The fabric was in whole or in part of a material fusible by heat or soluble by a solvent. The fabric was cut by means of knives or other cutting means, either hot or cold, and the cut edges sealed against fraying by thermal fusion or by the action of a solvent or softening agent. The inventor pointed out that the temperature of the cutting device should preferably be sufficiently high to melt the freshly made edge, but not so high as to melt any of the material appreciably distant from the edge. The court, in determining validity, reviewed several prior patents embodying the prior art. One of them taught the cutting of rubber sheets into strips with provision for treatment by electrically heated wires to bring the edges of the material to a melting point and thus avoid therein all jagged edges. The court concluded that the claims in suit were void for want of invention by reason of the prior patents. The opinion reiterates the well-established rule that an anticipating device or description thereof must be such that from it one skilled in the art or science to which it relates would be enabled to practice the later invention. That the prior inventor's structure for using the method was neither the best possible nor as skillfully

designed or used as that subsequently employed by the patentee, is not material on the issue of invalidity because of the anticipation.

In Helene Curtis Industries, Inc., v. Sales Affiliates, Inc., 2 Cir., 1956, 233 F.2d 148, validity of a patent issued on December 4, 1951 on application dated June 16, 1941 was in issue. It was held anticipated by a patent issued on October 28, 1941 on application dated December 9, 1935, and by another patent issued June 27, 1944 on application dated June 20, 1938. This finding of anticipation was reached under the doctrine of Alexander Milburn Co. v. Davis-Bournonville Co., 1926, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, which is now codified in 35 U.S.C.A. § 102(e).

■■■■ Despite the rule that hindsight from the viewpoint of the later invention may not be employed in determining whether the earlier invention anticipated the later, the writer feels that with the knowledge of Hoyler and Corwin, any improvement or extension effected by Messing, including the use of the Hoyler method to achieve an effect of imitation quilting would be obvious had it not been subsequently disclosed by Messing. I would be called upon to decide the question posed by this motion ultimately. Were such decision to await trial, I can conceive of no evidence which might lead me to a conclusion other than that the claims of the patent which are attacked by the present motion are invalid.

I hereby determine that the Messing patent 138 is invalid under 35 U.S.C. § 102(e) because anticipated by Hoyler. Defendant's motion for summary judgment must prevail. An order may be presented accordingly.