**FEDERAL PACIFIC ELECTRIC COMPANY**

v.

**WADSWORTH ELECTRIC MFG. CO., Inc., et al.**

Civ. A. No. 22693.

United States District Court
E. D. Pennsylvania.

June 11, 1963.

Leon Edelson, Philadelphia, Pa., Harry Cohen, Edwin Levisohn, Paul S. Martin, New York City, for plaintiff.

Dexter N. Shaw, Charles H. Howson, Jr., Howson & Howson, Philadelphia, Pa., Edward B. Evans, Edmund P. Wood, Wood, Herron & Evans, Cincinnati, Ohio, for defendants.

KIRKPATRICK, District Judge.

This is an infringement suit brought by the plaintiff, assignee of United States Patent No. 2,647,225, issued July 28, 1953, to Cole and Christensen. Both the plaintiff and the defendant are manufacturers of electrical devices. The subject matter of the patent is a panel on which are mounted automatic circuit breakers. The assembly is called a "load center" and is intended to perform (principally in residences and apartment houses) the same function as the conventional fuse box, the circuit breakers taking the place of the fuses.

The issues in the case are the usual ones of validity and infringement.

The internal mechanism of the circuit breakers is not involved, the invention having to do with the way in which they are mounted upon the panel, conjointly with the manner of their insertion into the electric circuit.

The claims in suit are Nos. 1, 13 to 18, inclusive, and 20 to 25, inclusive. The plaintiff has selected claim 18 for presentation and analysis in its brief and that claim will be accepted as representative. It is as follows:

"18. A distribution panel board, comprising an electrical panel, and a plurality of automatic circuit breakers releasably mounted thereon, said panel having plug-in electric terminal securing means carried thereby and circuit breaker holding means disposed laterally of and spaced from said plug-in electric terminal securing means so that a plurality of circuit breakers may be mounted in side-by-side relation on said panel in endwise positions between said holding means and said plug-in electric terminal securing means, each of said circuit breakers having a casing provided with complementary holding means and complementary plug-in electric terminal securing means spaced from each other endwise of the circuit breaker casing, said panel holding means and said circuit breaker holding means having releasable mutually interengaging portions to position the adjacent end of the circuit breaker casing on the panel and prevent lateral movement of said adjacent end on the panel and said plug-in terminal securing means of the panel for a companion circuit breaker being disposed in lateral alignment with the holding means of the panel for such companion breaker so that when it is engaged by the plug-in terminal securing means of the circuit breaker the opposite end of the latter is positioned on the panel and releasably held against lateral movement thereon whereby to releasably hold the plurality of breakers in parallel side-by-side relation, said holding means and plug-in electrical terminal securing means of the panel also having parts which engage the companion breakers to releasably oppose removal thereof from the panel, the panel holding means comprising a plurality of hook-like elements and the complementary holding means on the circuit breakers comprising recessed portions in which said hook-like elements are engaged, each circuit breaker being mountable in position on said panel by first engaging its complementary holding means with the panel holding means and then pivotally moving the circuit breaker on said panel with said panel holding means as a fulcrum to engage the plug-in electrical terminal securing means of the circuit breaker with the plug-in electric terminal securing means of the panel."

The language of this and most of the other claims is about as complicated and prolix as language describing a comparatively simple invention could be made. The patented structure as disclosed by the specification consists of a panel with a number of single pole circuit breakers mounted on it in two parallel rows on either side of a centrally located bus bar, and releasably attached. Each is pivoted at one end and furnished at the other with a projecting conductor which may be brought into contact with the bus bar

and held there frictionally, thus completing the electric circuit. This projecting conductor may, as shown by the specification and drawings, take the form of either a notched, three-fingered, resilient prong or a single blade.

When installed, the end of each circuit breaker away from the bus bar is secured to the panel by a rigid hook protruding from the panel which engages a recess in the circuit breaker, the two constituting a pivot on which the circuit breaker may turn. The "load" terminal (meaning the terminal connected to the house wiring) is the conventional screw terminal. The ends of the circuit breakers adjacent to the bus bar are held in contact with it, in the "prong" form, by "stabbing" the prong into an appropriately sized opening in the bus bar or, in the "blade" form, by inserting the single blade projection between spring-loaded jaws on the bus bar which will hold it securely when it is forced between them.

When a circuit breaker is to be installed on the panel, the hook of the panel is first engaged in the recess of the circuit breaker, the other end of the circuit breaker being tilted upward. The circuit breaker is then turned upon the hook as a pivot and the prong or blade is inserted into the bus bar so that it serves as the electric terminal for conducting the current from the power mains through the circuit breaker to the house wiring. The claims cover, more or less broadly, this construction and its obvious equivalents.

▆ The inventor, Cole, on the witness stand pointed out a number of advantages which he believed were to be found in the patented structure. Without attempting to evaluate these advantages, it may be assumed that the mechanism is superior in convenience and economy to anything on the market at the time when it appeared. This, however, is not enough to confer patentability upon it. "It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism. * * * Where a patentee combines the best features of old structures without the disadvantages of any of them, resulting in a substantial improvement in performance over anything which had gone before, it must be found, in order to sustain the patent, that the increase of efficiency of the new combination is an ' "unusual or surprising" consequence of the unification', * * * or yields some 'surprising or extraordinary result' ", General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 917.

A glance at the cited and offered examples of prior art will show that every element of the invention in suit was old and, furthermore, that each of the old elements performed exactly the same function in its old assembly that it performs in the patent in suit.*

Load centers consisting of a plurality of circuit breakers, releasably attached to a panel in rows on opposite sides of a central bus bar, are old in the art, appearing in numerous prior patents, for example, Jennings No. 1,872,296 and Pokorny No. 2,319,262.

Making an electrical contact by mounting one end of an element and swinging the other end, as on a hinge, into contact with the source of current is present in the conventional knife switch and appears in connection with a distribution panel in Krantz No. 755,141.

The concept of substituting for a permanent hinge a detachable one, employing a stationary hook on the panel to engage a recess or its equivalent on a circuit breaker, appears in Johansson No. 2,372,083, Stanley No. 2,530,548, and in the QL Panelette (a circuit breaker and panel assembly formerly manufactured and sold by the plaintiff).

---

* In the following discussion the citations to the prior art, where various elements are to be found, are not exhaustive. Reference to and discussion of each of the prior art patents cited would merely be cumulative and unduly lengthen this opinion.

Much is made by the plaintiff of the fact that the "holding means" (hook and recess) pre-positions the circuit breaker so that when it is rotated the "stab" or other contact at the opposite end is brought with precision into contact with the bus bar. However, the naked concept that a hinge at one end of a structure will normally bring the other end into a pre-determined position can scarcely require the citation of prior art to bring out its obviousness. This same principle is involved with every door or gate mounted on a hinge which swings shut and latches.

As to the means by which contact with the bus bar is established, it is first to be noted that none of the claims in suit call specifically for a prong (either with or without notches) or other member adapted to be inserted into and releasably engaged with the bus bar. However, the plug-in method of establishing an electrical connection, by means of a blade releasably inserted into either jaws or an aperture, is embodied in countless electrical devices of household use and, if a disclosure in the patented art be required, one can be found in the Mylius patent No. 2,088,480. What the claims in suit call for is a member described in varying terms, all providing for the connection in language no more specific than "plug-in electric terminal securing means." Thus it cannot be argued that this element of the claims is anything but old. So far as the claims are concerned, I draw no distinction between mounting the blade or prong on the circuit breaker with the jaws or other receiving means on the bus bar and mounting those elements vice versa. Either construction appears to be the full and complete equivalent of the other. The construction with the jaws on the circuit breaker appears in Stanley patent No. 2,530,548, Speck patent No. 2,502,537, and Hoban patent No. 1,676,143.

Even if some distinction could be drawn between the plug-in means of the patent and the means used in the prior art for making electrical connections of circuit breakers to bus bars so that the claims could not be called a mere aggregation of old elements, the claims would still be invalid. It would be obvious to anyone skilled in the art desiring to construct a plug-in circuit breaker to employ the means used by the inventors. The concept of establishing electrical contact by the same structure which physically secures the device in place is old, appearing in Speck, Hoban, and Jackson No. 2,440,824. Moreover, the substitution of a frictional engagement for Pokorny's screw would not in my opinion produce a new and unexpected result and confer patentability on this change.

One example of the prior art will be discussed in detail, namely, the Stanley patent which attaches the circuit breaker to the panel at the load end by means of a foot which is engaged beneath a hook so that the breaker can be tilted and swung toward the panel board exactly as in the patent in suit. Also, in Stanley, when this movement is completed, the line end of the circuit breaker is engaged with the bus bar by means of what may be described as a clip or jaws, thus accomplishing the dual purpose of establishing the electrical connection and holding the circuit breaker in place—one of the advantages claimed for the patent in suit. It is true that Stanley uses additional means to anchor the line end of his breaker firmly to the panel board, but this means is probably unnecessary since, if a good electrical contact between the jaws and the bus bar is to be maintained by Stanley's clip or jaws, they would have to have a very firm grip. In any event, it would always be a simple matter of design to increase the gripping power of the jaws.

The plaintiff has met with rather exceptional commercial success in the sale of load centers manufactured in accordance with one version (the prong form) of the device disclosed in the patent. "The fact that his process [product] has enjoyed considerable commercial success, however, does not render the patent valid. It is true that in cases where the question of patentable invention is a close one, such success has weight in

tipping the scales of judgment toward patentability. * * * Where, as here, however, invention is plainly lacking, commercial success cannot fill the void." Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 272, 93 L. Ed. 235.

■ I do not think that this case presents a state of facts where the question of obviousness is in doubt. Even if it did and the plaintiff's commercial success could properly be considered on the question of patentability, the evidence does not persuade me that the plaintiff's success was due in any measurable degree to the merits of the patent sued upon. Where success in the market place may be due to factors other than the merits of the patent, it, obviously, cannot be availed of to prove patentability.

The patent in suit is an outgrowth of an extensive program undertaken by the plaintiff to put upon the market a load center which would be competitive in price with the conventional fuse box. The plaintiff developed automatic machinery and materials which were suitable to automatic manufacture, at the same time redesigning its circuit breakers so as to minimize the use of the more costly materials. The techniques of manufacture developed in this very successful program resulted in substantial economies in the production of the plaintiff's load centers.

The product was marketed at first at a very low price. An extensive advertising campaign was undertaken, one of the prominent features of which was to stress the "locking function" of the notches in the three-fingered prong. As pointed out before, the claims in suit do not call for any notched prong. In addition, the load center thus developed and marketed was described in its advertising as having many "plus" features not theretofore offered to the trade— for example, a door on the box.

It should also be noted that the circuit breaker marketed by the plaintiff bears the notation of 27 patents upon

it and a court would have great difficulty in determining which patent or patents were responsible for its commercial success. It is true that there is no evidence that any of the above factors other than the patent in suit were responsible for the large sales achieved by the plaintiff. However, it is the plaintiff who is seeking to have the Court infer from the successful exploitation of the patent that its invention was unobvious, and it is the plaintiff's burden to satisfy the Court that its success was, in fact, due to the merits of the patented invention rather than other factors. If commercial success were material in this case, I would, therefore, have to conclude that the evidence of commercial success is insufficient to establish the patentability of the claims in suit.

In order to escape infringement, the defendant contends that the claims in suit must be interpreted as to be limited to a circuit breaker equipped with a prong which is notched so that when it is inserted into the bus bar the notches perform a locking function. It bases its position upon the fact that this version of the device (though not mentioned in the claims in suit) was stressed by the applicants in the prosecution of the patent. However, in reviewing the proceedings before the Patent Office, I cannot find that the claims in suit were allowed because the Patent Examiner was led to interpret them as being restricted to this construction—a necessary element of file wrapper estoppel.

■ Another reason advanced by the defendant to limit the claims in suit to the notched prong is that in 1949 the inventors decided to proceed with the commercial development of this locking prong and did not continue their plans for the commercial production of the blade form (shown in figures 7 to 11 of the patent). I cannot construe this as an "abandonment" within the meaning of 35 U.S.C. § 102(c), of all forms of the invention other than that containing the notched prong. The fact is that they included this construction in their ap-

plication for their patent and some of the claims at least were drawn to cover it. An applicant for a patent is clearly not required to produce commercially each and every version of his patent at the risk of being held to have abandoned it.

In view of my finding that the inventors did not abandon the construction shown in figures 7 to 11 of the patent, the General Electric construction, which is very similar to the defendant's alleged infringing device, cannot be said to have anticipated the patent. This development occurred in the summer of 1949, and the plaintiff admittedly had conceived the invention prior to that time and it was continuously engaged in its development as part of its program for commercial production until the time of the patent application.

The structure charged to infringe the patent is the electric panel and associated circuit breakers of the defendant's load center. The electric panel of the accused structure has central bus bars, and the circuit breakers are mounted in parallel rows on both sides of these bus bars. The bus bars have blade-like projections extending upwardly, the blades being disposed transversely to the length of the bus bar. The panel also has hooks spaced the length of the circuit breakers from the bus bar projections. The circuit breakers designed for use on this panel have a projecting foot at the load end. The foot has a notch or recess which engages the hook on the panel. The opposite end of the circuit breaker which connects with the bus bar has spring-loaded jaws. When a circuit breaker is installed on the panel it is at first tilted up from the foot, which is engaged by the hook. Using the hook as a fulcrum, the circuit breaker is pivoted downward toward the bus bar so that the blade on the bus bar is forced between the jaws on the circuit breaker, thereby making electrical contact and physically affixing the circuit breaker to the panel. Of course, a circuit breaker may be removed by pulling the line end from the bus bar.

The patent drawings disclose two forms of the claimed invention. Figures 1 to 6 show a "prong" form, and figures 7 to 11 disclose a blade form. However, the claims (which are largely means claims) seem to me to be broader than the specific construction disclosed in the drawings. A detailed analysis of the claims in suit, which, as I have stated, are lengthy and prolix, need not be attempted. It is apparent that the accused structure infringes some of them literally and, as to the balance, the doctrine of equivalents is applicable.

The only significant difference between the accused structure and that shown in figures 7 to 11 of the patent is that in the accused structure the jaws are mounted on the circuit breaker with the blade on the bus bar, whereas in the drawings the blade is on the circuit breaker and the jaws on the bus bar. It is to be noted that in the claims the language "plug-in electric terminal securing means" is used when referring to both the bus bar and the complementary structure on the circuit breaker. This language is appropriate, for there is no significant difference between plugging the circuit breaker into the bus bar or, so to speak, plugging the bus bar into the circuit breaker. All other parts associated with mounting the circuit breaker are the same in the accused structure and that of the patent.

It follows that, as to those claims which do not read literally upon the accused structure, the doctrine of equivalents applies and infringement of those claims must also be found. Each element of the accused structure associated with mounting of the circuit breaker upon the panel "performs substantially the same function in substantially the same way to obtain the same result," Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147, as do the corresponding elements of the patented construction.

I hold that (1) the claims are invalid since they are mere aggregations of elements disclosed in the prior art which achieve no new or unexpected

result and fail to claim anything which is unobvious in view of that art and (2) the accused load centers infringe all the claims in suit.

An order in accordance with the foregoing may be submitted.