**MODERN MILLINERY BOX CORP.**

v.

**BOAS BOX CO.**

Civ. A. No. 29187.

United States District Court
E. D. Pennsylvania.
July 15, 1963.

Jacob Trachtman, Philadelphia, Pa., Kirschstein, Kirschstein & Ottinger, New York City, of counsel, for plaintiff.

Arthur H. Seidel, Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

This is a patent infringement suit brought by plaintiff, assignee of United States Patent No. 2,954,153, issued on September 7, 1960, to David Bennett. Both plaintiff and defendant are box manufacturers, and the subject of the patent is a collapsible box which snaps open ready for use and is provided with paper locks to prevent accidental collapse while in use. The box in suit is used principally in the millinery and floral trades.

The issue in this case is validity, defendant's contention being that the Bennett patent is invalid in light of the prior art and is also invalid because the claims are indefinite. If the patent is valid, defendant concedes infringement.

The basic box is a conventional hexagon shaped bottom center-fold collapsible box which is disclosed in the Berkowitz Patent No. 1,555,054, issued September 29, 1925, and in the Australian Patent No. 158,551, dated August 30, 1954, the latter being cited by the patent examiner. This box is cut from a single cardboard or similar blank, and includes a bottom wall with an even number of sides and a ring of side walls corresponding to the sides of the bottom wall. Those side walls which are parallel to the bottom center-fold are directly joined at a crease line to the bottom wall. The other side walls are connected to the bottom wall by means of flaps or "gores". The box is stored and shipped in a knocked-down condition, but can be snapped erect by pressure on the opposite ends. When snapped erect the box is ready for use and no folding or locking of sides prior to use is required, as distinguished from the so-called side-fold boxes, as exemplified by Klein Patent No. 1,865,635, Greisman Patent No. 3,750,100, and Gillmore Patent No. 2,963,210, all cited by defendant as prior art, or the Lighter Patent No. 2,367,410, cited by the patent examiner, in which some of the sides must be locked together before the box may be used.

Basically, a side-fold box is a precut and creased cardboard blank, some of the sides of which may be connected in its manufacture. The box is stored and shipped flat, and prior to use, some or all of its sides must be folded up and locked into position by means of flaps or paper locks appropriately placed to prevent the sides from moving and to prevent the box from collapsing back into the form of a blank.

Bennett's invention is claimed to be the combination of the Berkowitz box and a locking flap. The lock is claimed to have been necessitated by a tendency of the Berkowitz box to collapse if inward pressure is applied to the two side walls which are parallel to the bottom crease line, or if pressure is applied upward against the bottom wall. The locks are attached to the side wall or walls which are not parallel to the bottom center crease line and are folded downward into a slot placed in the crease line between the bottom wall and the gore which connects that portion of the bottom wall to the side wall. Positioning the flaps in the slots prevents the collapse of the box by preventing the upward movement of the bottom wall.

We find, as plaintiff contends, that there is some tendency of the Berkowitz box to collapse. This was recognized by Berkowitz in his original patent and he devised a system of using strings to avoid the collapse. According to the testimony this was never used, being too complicated and commercially impractical. However, we have not been convinced that the problem of collapse is as significant as plaintiff contends, nor are we convinced, as plaintiff would have us believe, that the claimed invention is a singularly noteworthy advance in the boxmaking art since it took over 30 years to solve the problem recognized by Berkowitz.

Firstly, we note that the plaintiff has produced and sold in goodly numbers the

Berkowitz box, despite its problems, and without the stringing device, since the 1930's. The evidence of any attempt to solve the problem during this period is scant. Bennett testified that he had worked on the problem occasionally and recently had engaged a firm of packaging engineers to devise a solution. No testimony was given as to the details of their solution, and we know only that although it avoided the accidental collapse problem it was not adopted as the box was then incapable of being snapped open. The only other significant evidence of an attempt to solve the problem is disclosed in the Weiner Patent No. 2,271,962, issued February 3, 1942, to David Weiner, a principal with Bennett of the plaintiff corporation. That invention involved attaching a flap across the bottom of the box and was apparently little used commercially as it was uneconomical. Despite the failure, plaintiff continued to produce the hexagon center-fold box.

Although Bennett testified that the problem of collapse was serious, the value of his testimony was seriously impaired, in our mind, by his own prior activities. Bennett had been associated with the plaintiff since the late 1930's. He left about 1955 and went to work for defendant until 1958 when he again returned to plaintiff. During his employment with defendant, it was Bennett himself who introduced defendant to the manufacture of the Berkowitz box, even though it collapsed, and defendant evidently became a serious competitor of plaintiff.

With this background, we reach the technical aspects of the claim of invention. As stated, Bennett added to the Berkowitz box a flap which fit into a slot. This prevented the bottom wall from moving upward and the consequent movement of the side walls inward, or, in the words of the claim, the purpose was *"to prevent relative movement of said side wall and said portion of said bottom wall. * * *"* Plaintiff concedes that flaps and slots have long been used on paper boxes but contends that their use, as disclosed by the cited prior art, has been limited to connecting adjacent walls and, in effect, to form the box by keeping the walls together. The use here on an already existing box to prevent movement of the walls, it is urged, is not anticipated or disclosed by the prior art, but is a use which obtains a different and novel result from the old device.

We are unconvinced that the instant use of the locking flap is novel or that its use would not be obvious to a person having ordinary skill in the art of designing collapsible boxes. 35 U.S.C. § 103. Both the explicit language of the claim and the testimony of plaintiff's expert, a cardboard packaging and container designer, clearly state that the purpose of the locking flap is to prevent relative movement of the side and bottom walls. And yet the expert testified:

"Q * * * is it not a fact that the principle of using locks to prevent the relative movement of walls is an ancient one in the box design art?

"A It is.

"Q And is it not a fact that any box designer faced with the problem of relative movement of one box wall with respect to the other would consider a lock as being a way of accomplishing the solution to this problem?"

"THE WITNESS: I don't feel that we have a box where the problem is relative movement.

"BY MR. SEIDEL:

"Q Answer this question.

"A I am answering the question. There is no question of relative movement. Nobody is trying to overcome relative movement; they are just trying to lock—join the corners of a box—but they are not trying to overcome any relative movement.

"Q You are anticipating a question I haven't asked you. I asked you if someone is faced with two walls which move in respect to each other, and they were a box designer having ordinary skill in the art,

would the use of locks be an obvious expedient that would come to their mind?

"A Lock, yes.

"Q Is it not a fact that the use of locks to prevent one wall in a box from moving in reference to the other has been used for, let us say, fifty years?

"A Yes."

This testimony can be construed in no way other than to completely destroy any basis of a claim of invention in the use of a locking flap. With respect to the particular placement of the flap, also deemed significant by plaintiff, finding as we do that the use of a flap is obvious, certainly its most effective placement can be no more than a matter of trial and error.

■■ Plaintiff has produced evidence of the commercial success of its patented box. Even if we believed that the question of patentable invention was a close one so that we might consider commercial success, see Jungersen v. Ostby & Berton Co., 335 U.S. 560, 576, 69 S.Ct. 269, 93 L.Ed. 235 (1949), here even the evidence of commercial success is weak. It is true that sales of the box did increase at about the time of the introduction of the lock, but this also coincided with the return of Bennett to the employ of plaintiff and with an increase in advertising expenditures, in one year as much as 92% over 1958, the year just prior to the filing of the patent application. This is not to say that some of the increased sales were not due to the use of the lock, for certainly the use of the lock was an advantage and from the record before us was superior to anything on the market, but this is not sufficient to make the device patentable when each of its elements is old and performed the same function in the patent in suit as in its old assembly: Federal Pacific Electric Co. v. Wadsworth Electric Mfg. Co., Inc., 221 F.Supp. 148 (E.D.Pa., C.A.No. 22693, June 11, 1963, Kirkpatrick, J.).

■ We hold the claim invalid as mere aggregations of elements disclosed in the prior art which achieve no new or unexpected result and fail to claim anything which is not obvious in view of that art. In view of our holding as to patentability, it is unnecessary to consider the defense that the claim is indefinite.

The foregoing opinion recites those facts which we deem relevant to the disposition of this case and the principles of law applicable thereto. They shall be considered as our findings of fact and conclusions of law.

Defendant's motion for attorney's fees will be denied.

An order in accordance with the foregoing may be submitted.