**ALLEN–BRADLEY COMPANY, a Wisconsin corporation, Plaintiff,**

v.

**AIR REDUCTION COMPANY, Inc., a New York corporation, Defendant.**

**Civ. A. No. 36–66.**

United States District Court
W. D. Pennsylvania.

Aug. 25, 1967.

John G. Gent, Erie, Pa., Louis Quarles, Arthur H. Seidel, Arnold J. Ericsen, Milwaukee, Wis., for plaintiff.

B. R. Coppolo, St. Mary's, Pa., W. Brown Morton, Jr., Martin J. Brown, Washington, D. C., H. Hume Mathews, Murray Hill, N. J., John McLaughlin, Erie, Pa., for defendant.

## OPINION

WEBER, District Judge.

Plaintiff is the owner of U. S. Patent No. 3,050,186 issued August 21, 1962, by assignment from the inventor Niles. Its complaint alleges that defendant is infringing Claims 1 and 2 of said patent by making, selling and using packaging embodying the patent invention. Plaintiff prays for an accounting, damages, and an injunction against further infringement.

The patent relates to a means of conveniently packaging small uniform thin cylindrical articles by mounting them transversely on a thin pliant strip with an adhesive coating, the strip and the articles adhered thereto being wound about a central spool in helical turns inside the end plates of the spool.

The plaintiff's business, as related to the patent concerned in this suit, is the manufacture and sale of electrical resistors. These are small-diameter elongated cylinders, from whose longitudinal ends extend thin deformable wires which comprise the major portion of their length. Plaintiff's problem was how to package compactly and inexpensively a substantial number of these so that they can be transported and handled without damage and be available for use by feeding into automatic assembly machinery.

Plaintiff's solution, as embodies in Claim 1 of this patent, was to attach the central body of the transistor transversely to a thin flexible band coated with a pressure sensitive adhesive material having cohesion superior to its adhesion (scotch tape). A large number are thus attached in a regularly spaced order and the band is wound around the central spool of a reel between its end plates with the attached resistors and the adhesive side facing inward so that each winding adheres to the prior winding and so that the tape can be unwound and the resistors removed from the adhesive material without contamination by it (releasably secured). The result achieved by plaintiff is stability and fixation of the resistors so that the soft, thin, deformable end wires do not become bent or entangled, and that the combination, the bundle of lead wires, is sufficiently strong to support end plates which form a package for shipment and handling.

Defendant's answer admits the issuance of the patent but denies that the

patent was duly and legally issued to plaintiff, denies infringement, and affirmatively pleads that the said patent is invalid and void as not meeting the conditions for patentability of 35 U.S.C. § 102(a), (b), (f) and (g), and 103. Defendant further asserts a counterclaim for declaratory judgment of invalidity, noninfringement and unenforceability of said patent on the same grounds. Plaintiff replies to the counterclaim that it presents no cause of action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, because plaintiff's claim relates to the same issues upon which defendant requests declaratory judgment.

Defendant has moved for Summary Judgment, asking for dismissal of plaintiff's action on the grounds of invalidity of the patent. Defendant alleges that printed publications available more than a year prior to the filing of said patent disclose the inventions claimed therein and that as a matter of law the said patent is invalid under the provisions of 35 U.S.C. §§ 102(b), 103, 282 and 285.

In support of its motion for summary judgment the defendant has filed the following evidentiary materials:

A. U. S. Patent 3,050,186, issued to Plaintiff August 21, 1962, as assignee of the inventor Niles, the patent in question.

B. The certified file wrapper and contents of Patent 3,050,186.

C. The prior art considered by the Patent Office in the proceedings on Patent 3,050,186 consisting of copies of the following patents:

| Patent No. | Inventor | Issue Date |
| --- | --- | --- |
| 1. 1,263,318 | Fischer | April 16, 1918 |
| 2. 2,135,134 | Ehlers | Nov. 1, 1938 |
| 3. 2,165,539 | Dahlgren | July 11, 1939 |
| 4. 2,251,609 | Freeburg | Aug. 5, 1941 |
| 5. 2,417,497 | Hulslander | Mar. 18, 1947 |
| 6. 2,454,821 | McKee | Nov. 20, 1948 |
| 7. 2,607,356 | Lewis | Aug. 19, 1952 |

D. The prior art found by Defendant and not considered by the Patent Office in the proceedings on Patent 3,050,186 consisting of copies of the following patents:

| | | |
| --- | --- | --- |
| 1. 111,051 | Fowler | Jan. 17, 1871 |
| 2. 212,642 | Allen | Feb. 25, 1879 |
| 3. 1,589,387 | Hartford | June 22, 1926 |
| 4. 2,014,726 | Flood | Sept. 17, 1935 |
| 5. 2,280,665 | Schmitter | Apr. 21, 1942 |

E. A specimen of Defendant's packaging alleged to infringe Plaintiff's Patent No. 3,050,186.[1]

————◆————

For the purpose of Defendant's Motion, defendant admits that it is infringing Plaintiff's patent and admits that Plaintiff can show commercial success.

Plaintiff has filed Cross-Motions for Summary Judgment asking for judgment of validity of the patent and judgment

1. A tabular comparison of all the prior art references cited by both parties and all claims of the plaintiff's invention is attached hereto as an Appendix.

that Defendant is infringing Claims 1 and 2 of the patent. In support of its motion, Plaintiff filed the following evidentiary materials:

1. Affidavit of Harold H. Zabel, an engineer employed in the Radio and Electronics Division of plaintiff corporation, making an analysis of the prior art and plaintiff's patent.

2. Affidavit of Arnold J. Ericsen, a patent attorney employed by plaintiff corporation, making an analysis of defendant's packaging and its infringement on the claims of plaintiff's patent.

3. The following patents not previously made of record in this case relating to the packaging of fixed resistors:

| Patent No. | Inventor | Issue Date |
|---|---|---|
| (a) 2,214,230 | Freeburg | Sept. 10, 1940 |
| (b) 2,558,920 | Baggs | July 3, 1951. |

4. A sample of plaintiff's packaging embodying the patent at issue in this case.

———◆———

In the briefs presented and at the extensive oral argument there seems to be a remarkable unanimity of opinion between opposing counsel that the matter was susceptible of summary judgment with respect to certain aspects of the case. Defendant contends that the matter is fully susceptible to summary judgment on the question of prior publication under § 102 or obviousness under § 103, in which case the infringement question becomes moot. Plaintiff agrees that the question of invalidity on these grounds can be determined as a matter of law with the evidentiary material before the court over which there is no substantial dispute. For the purpose of its motion on prior publication or obviousness, defendant admits that plaintiff's packaging has had commercial success and admits that for the purpose of this motion its own package infringes Claims 1 and 2 of plaintiff's patent. Defendant makes no argument with the evidence produced in the Ericsen affidavit, and specifically admits that a determination of "claim applicability" may be made on the present record, reserving nevertheless all its defenses on the validity of plaintiff's patent, the final question of infringement being postponed until there has been a full determination of validity.

Plaintiff admits that because defendant has raised other defenses to the validity of the patent, aside from those raised in the motion, its Cross-Motion for Summary Judgment for validity cannot be determined on this record.

In summary, therefore, we have a judicial admission by defendant that Claims 1 and 2 of plaintiff's patent do "read" on defendant's package, and that the claims of plaintiff's patent are applicable to defendant's package. Rule 56(d) provides for such a determination, disposing of this issue, final judgment of infringement to abide the determination of validity after trial of that issue, if not disposed of on the present motion.

■ We consider the question of determination of a patent question appropriate for disposition by summary judgment under Federal Rule of Civil Procedure 56 in the same manner as that rule is applied to other cases, that is, when there is no genuine issue as to any material fact. Montmarquet v. Johnson & Johnson, 82 F.Supp. 469 [D.N.J.1942], aff'd per curiam 179 F.2d 240 [3rd Cir., 1950], cert. den. 339 U.S. 979, 70 S.Ct. 1025, 94 L.Ed. 1384 [1950].

■ In the recent case of The Borden Company v. Clearfield Cheese Co. Inc., 369 F.2d 96, [3rd Cir., 1966], the Court

of Appeals reaffirmed this rule, although reversing summary judgment because of the combination of circumstances obtaining in that case. The following guidelines were stated:

"The rule is explicitly stated in Messing v. Quiltmaster Corp., D. C., 159 F. Supp. 181, 116 USPQ 378, 380. 'However, in order to determine patent validity on this motion " * * * the court must be certain that it does not need any expert testimony or other extrinsic evidence to explain or evaluate the prior art, or to explain the application of complicated patent descriptions to the subject matter of the patent so that by a mere comparison of the patent in suit with the prior art patents the court can comprehend the similarities or differences in the patents, invalidity for lack of invention being so clearly apparent on the face of the patent that no testimony could change that conclusion" ' ". 369 F.2d 101.

The Court has had the advantage of extensive evidentiary material, affidavits of experts as in *Montmarquet,* supra, copies of the patents embodying the prior art, both as found by the patent office, and the additional patents produced by both counsel, actual samples of plaintiff's and defendant's packages, courtroom demonstrations and blackboard drawings made during argument, and extensive oral argument by extremely able and experienced patent counsel.

The court finds that the patent in suit and the prior art are easily understandable by the court without expert aid. These devices incorporate no principles of chemical or electrical reactions, they are all packages of paper, cardboard, tape and adhesives.

Our review of the positions of the parties convinces us that the validity of this patent, for the purpose of the present motion, depends upon the non-obvious nature of the invention under § 103 of the Act. To the extent that evidence in support of defendant's claim of prior publication is considered, we believe that this is relevant to the claim of obviousness.

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 [1966], the Supreme Court stated that the obviousness or nonobviousness requirement of § 103 ˙required several basic factual inquiries:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." (p. 17, 86 S.Ct. p. 694).

Summary judgment invariably rests upon a factual background and it is inappropriate only when a material fact is subject to genuine dispute. If the material facts are not disputed, and, if on these undisputed facts the difference between the invention here alleged and the prior art would have been obvious, a summary judgment for invalidity is entirely proper. Walker v. General Motors Corp., 362 F.2d 56, 59 [9th Cir., 1966]. What the prior art was and what the patentee did to improve on it are matters of fact, but in this record there is no dispute as to these facts. While a more lengthy record might be developed on a trial of this issue, it is difficult to see what additional evidence either party could produce relevant to the issue. All this evidence has been produced without substantial dispute between the parties. Whether what ˙the patentee did is properly to be classified as an invention is a question of law. National Lead Co. v. Western Lead Products, 291 F.2d 447, 451 [9th Cir. 1961].

In so considering plaintiff's patents we do not ignore the presumption of validity that attends a patent issued by the patent office. 35 U.S.C. § 282. This places a burden of establishing invalidity on one alleging it by clear and convincing proof. Walt Disney Productions v. Niles Communication Center, 369 F.2d 230 [7th Cir. 1966]. However, here defendant cites prior references not utilized by the Patent Office which impair the presumption of validity. Rosaire v. Baroid Sales Div., National Lead Co., 218 F.2d 72, [5th Cir., 1955], cert. den. 349 U.S. 916, 75 S.Ct. 605, 99 L.Ed.

1249 [1955]. Chemical Construction Corp. v. Jones & Laughlin Corp., 311 F. 2d 367 [3rd Cir., 1962]. However, the new references cited by defendant must reveal some substantial new element in the prior art not previously considered. Otto v. Koppers Co., Inc., 246 F.2d 789 (4th Cir., 1957), cert. den. 355 U.S. 939, 78 S.Ct. 427, 2 L.Ed.2d 420. We believe defendant's new references are substantial. In any event, we do not feel that the statutory presumption is a bar to summary judgment.

"But respect for such considered administrative decision does not justify abdication of the normal judicial function. It still remains the responsibility of the United States Courts to see that patent monopoly is enjoyed only pursuant to a correct standard of invention properly applied." Alco Kar Kurb Inc. v. Ager, 286 F.2d 931 [3rd Cir., 1961].

Here there is no dispute as to scope and content of prior art. These are fully set forth in exhibits over whose genuineness there is no dispute. The differences between the prior art and the claims at issue are clear; they have been fully demonstrated to the court. The level of ordinary skill in the present art is the only remaining factual inquiry under the rule of Graham v. John Deere, supra. The structures disclosed in the prior art are extremely simple, requiring no additional explanation. Plaintiff's device is also extremely simple. If the difference would have been obvious to a person of ordinary skill in the art, summary judgment is proper, and if we but postulate a minimum of skill in the art as being the same as that of an intelligent layman, we see no conclusion but that plaintiff's adaptation of "scotch tape" to hold resistors in place while rolled around a spool would suggest itself as a possible solution to plaintiff's packaging problem. We are all aware of the almost limitless uses to which scotch tape may be put to attach or hold materials. Its properties are of almost universal knowledge. Plaintiff's claim of unusual result is based on a statement that persons familiar with the art were surprised that cylinder resistors of small diameter would adhere to it transversely mounted and remain attached in place, but it appears without question to the court that only a modicum of skill in the art would be required to try the known properties of scotch tape, to see if it would do here what it does in most every other application to which it is subjected. Any problem of adhesion of small diameter cylinders laid crosswise to the tape would be solved by increasing the thickness of the layer of adhesive material. It held pins in Fowler, it held springs in Dalgren. We conclude that the level of ordinary skill in the art poses no problem because we assume such skill at the "minimum conceivable level." Walker v. General Motors, supra, 362 F. 2d p. 60.

In support of this conclusion we turn to plaintiff's own statement in support of his motion for summary judgment on the infringement issue. "It is believed that there can be no genuine issue of any material fact concerning either defendant's construction or the application of the claim language, so that a motion for summary judgment is proper." If there can be no genuine issue as to the facts of infringement, wholly aside from defendant's admission that the claims cover his package, we find that there can be no genuine issue as to how plaintiff's package is constructed and how it operates.

Defendant argues that plaintiff's patent is a combination of the teachings of the prior art which produces no new or different result. As two prime examples he cites the patents of Schmitter (2,280,-665) and Flood (2,014,726). Schmitter was a reel type of package for packing small diameter cylindrical objects, the objects being held in place by the corrugations of cardboard wound round the reel. Plaintiff counters that this does not solve the problem which it faced because the width of the cardboard wrapping band equals the length of the resistors and their wires, preventing these wire ends from being grasped easily by the automatic assembly machinery: and because nothing holds the resistors in

place once the corrugated band is unrolled from the reel. However, this is a mechanical problem depending upon the size and depth of the grooves.

Plaintiff's solution was a reel like Schmitter's, with a narrow cohesive-adhesive flexible band (scotch tape), which held the center part of the resistors in place by its adhesion; which allowed them to be removed from the adhesive without contamination by the adhesive because of its superior cohesive quality; and which allowed the wire ends to be free for the operation of automatic assembly machinery yet holding the body of the resistor firmly so that the wires did not become tangled. The narrow adhesive strip replaced Schmitter's broad corrugated strip of paper.

In considering plaintiff's claim as to the use of adhesive, the Patent Office Board of Appeals Noted:

"However, the newly cited patent to Dahlgren [U. S. Patent No. 2,165,539 issued July 11, 1939] which has come to our attention shows that it is old in packaging to coat a strip or sheet with pressure sensitive adhesive and retain articles in spaced relation thereon by 'lightly pressing the articles to the coated surface' ". File Wrapper, p. 117, col. 1, l. 33.

The Dahlgren patent related the same problem that plaintiff faced, keeping small wire components separate.

"Small helical wire springs afford an outstanding example of such an article. They roll readily upon the slightest tilting of the surface by which they are supported and become inter-entangled. In the handling of large numbers of these springs, unless they are kept out of contact with each other, they may form a tangled mass, the untangling of which may be more costly than the value of the entangled· springs. Attempted untangling of the springs may result in such injury to many of them as will render them unfit for the use for which they are intended.

"According to the present invention, the tendency of small articles to roll or engage each other is eliminated by providing a sheet coated with pressure sensitive adhesive material upon which the articles may be arranged. By lightly pressing the articles to the coated surface, they remain for an indefinite period of time as arranged, and do not come into contact with each other." U. S. Patent No. 2,165,539 (Dahlgren) p. 1, lines 16–41 incl.

Moreover, the specific application contended by the plaintiff is more closely anticipated by the claims of Flood. "Objects of the present invention are to provide for simplifying the operation of transferring a pin or other fastening element from a carrier or supply strip into position to be inserted or driven into fastening position in a ticket or the like." Flood, Patent 2,014,726, p. 1, col. 1, lines 26–31. "These pins are disposed wholly on one side of the strip 51 and transversely thereof and are arranged substantially against each other with their head and pointed end projecting freely beyond the longitudinal edges of the strip. The pins are releasably secured to the strip along their intermediate or shank portions by means of suitable adhesive material. Preferably the pins engage the adhesive substantially in line contact, as illustrated by Fig. 5. A broad band or contact between the pin and a tacky or hard drying adhesive film or coating would tend to cause tearing of the film strip or to remove an objectionable amount of adhesive material upon removal of the pins in the manner described herein." P. 2, col. 2, lines 16–31.

In addition to Dahlgren and Flood, the use of cohesive and adhesive mounting material was illustrated in Hulslander [No. 2,417,497] March 18, 1947, which involved a reeled adhesive strip for mounting discs, tags or labels; Lewis, [No. 2,607,356] August 19, 1952, which involved a reeled adhesive strip for mounting manicuring aids; and Fischer, [No. 1,263,218] April 16, 1918, a device for holding and spacing nails on any adhesive strip.

In Fischer and Flood, the adhesive band is applied at the center of the trans-

verse of the cylinder to be held, as in the instant case, and the ends are left free.

Plaintiff does not strongly dispute the prior art which reveals that reel type packaging of thin cylinders was known before, and that the use of adhesive mountings was known before. Plaintiff does contend that there was nothing in the prior art to show that reel wrapping, by the use of a narrow adhesive band, would provide sufficient strength and stability both to protect the easily bent lead wires of resistors in such a package and that the combined strength of the bundle of resistors would provide sufficient stability for the end plates of the reel so that it could be handled and shipped in such a package and be unreeled in a strip with the wire ends free and spaced for use in an automatic assembly machine.

Plaintiff argues that this is a sharp departure for the handling of resistors, which were formerly packaged in corrugated or slotted paper bands or strips wide as the length of the resistor, and held in place by the slots or folds of the paper. Basically, the new departure in plaintiff's case involves the use of the adhesive, which we have shown to be known to the art.

Plaintiff further contends that this combination produced an unexpected result in that persons familiar with the art did not deem the invention workable to hold the resistors firmly so that the end wires would remain free, that the narrow adhesive band would hold a cylinder of such small diameter fixed, and finally that the reel and end plates would produce a stable protective package. [See Zabel Affidavit]. However, Flood held objects of small diameter [pins] fixed to a narrow adhesive band, so that the heads and points protruded beyond the adhesive band.

■ The concept of "unexpected result" has received considerable treatment by the courts. In United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, [1966] the Court found that despite the fact that each of the elements of the Adams battery was well known in the prior art, to combine them as did Adams must ignore certain long accepted factors which would deter any investigation into the combination used by Adams.

"This is not to say that one who merely finds new uses for old inventions by shutting his eyes to their prior disadvantages thereby discovers a patentable innovation. We do say, however, that known disadvantages in old devices which would naturally discourage the search for new inventions may be taken into account in determining obviousness." (p. 52, 86 S.Ct. p. 714).

Did the plaintiff achieve something new and unexpected by the use of the narrow adhesive tape? Plaintiff was faced with a mechanical problem. Plaintiff found that the thin diameter resistors would adhere firmly to their transverse placement on the thin adhesive band. But this was true of common pins in Flood. The adhesive band in plaintiff's package performed its *expected* function, it retained the material pressed against it. There was nothing in the known qualities of this material (scotch tape) which under the *Adams* doctrine would discourage inquiry into whether it would retain in place a thin diameter cylinder pressed against it. Once the cylinder is retained in place on the tape, there is nothing that would discourage inquiry into whether or not this tape with the cylinders mounted transversely thereon could be rolled upon a reel, as were both the adhesive devices previously cited [Flood, Fischer, Lewis, and Hulslander], or the non-adhesive holders as illustrated by Schmitter and Fowler.

■ We do not find that the elements combined by plaintiff's patent produced an unexpected result. The resistors adhered in place to the adhesive material, as might be expected; the adhesive material was a pliant band which would be wound upon a reel; and the combined tightly wound bundle produced sufficient strength to support the end plates of the reel and make a sturdy package. A bound bundle of thin diam-

eter cylinders has been a symbol of strength through union at least since the days that the *fasces* was carried before the Roman magistrates.

"If the combination of the old elements does not perform any new or different function or operation theretofore performed, then it is not patentable. 'The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality of function from being brought into concert, but this is not a usual result of uniting elements old in mechanics.' Great Atlantic and P. Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162, 87 USPQ 303, 305–306, rehearing denied, 1951, 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663." C–Thru Products, Inc. v. Uniflex, Inc., 262 F. Supp. 213, 219 [E.D.N.Y., 1966].

Plaintiff has argued that his invention is a development in the electronics industry, peculiarly developed to meet the needs of the electronics industry, and should therefore be considered from the point of view of electronics. However, we are convinced that he has a packaging device. The title of the Niles application is "Packaging for Small Uniform Articles", and while it is of special use for the packaging of resistors, there is nothing in its make-up to limit it to such use. We find no quality in this device which brings it within the special treatment for chemical or electronic devices mentioned in Great Atlantic and Pacific Tea Co. v. Supermarket Eq. Corp., cit. supra. As compared with Adams v. United States, cit. supra, we do not have a new, unexpected result in a combination of known chemical components with recognized properties whose known reactions discourage new investigation into their combination. In *Adams,* a new, surprising and unexpected function appeared from the combination of previously known elements. Here, every element did what was expected of it; there is no

change in the function of any component, and together the combination of known components produced a successful result.

"A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee had added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as monopoly." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. p. 152, 71 S.Ct. p. 130.

■ Plaintiff cites another secondary consideration of unobviousness. The product has had impressive commercial success, and the defendant admits this. All major manufacturers of similar resistors employ the invention. However, "commercial success without invention will not make patentability." Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334 [1939]; Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corporation, cit. supra, 340 U.S. p. 153, 71 S.Ct. 127.

In Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 [1950], the Court announced a standard of invention applicable to combinations of prior elements.

"Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned, and there is nothing to indicate that the lower court scrutinized the claims in the light of this rather severe test." [p. 152, 71 S. Ct. p. 130]

We do not find that this test has been relaxed since the adoption of the 1952 Act, or modified by later decisions.

**940**

■ In Bentley v. Sunset House Distributing Corp., 359 F.2d 140 [9th Cir., 1966], the Court repeated the doctrine:

"In assessing the patentability of combination patents, we are to apply a 'severe test,' whether 'the whole in some way exceeds the sum of its parts' to produce 'unusual or surprising consequences from the unification of the elements * * *'" [p. 144].

■ Also in Santa Anita Mfg. Corp. v. Lugash, 369 F.2d 964 at p. 967 [9th Cir., 1966]:

"It is apparent from the record and findings that the trial court tested patentability by the requirements of 35 U.S.C. § 103, the test of obviousness * * * Unquestionably these statutory requirements are prerequisite to the issuance of any patent. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 [1966]. But in the special case of combination patents, the 'severe test', referred to in Bentley v. Sunset House Dist. Co., 9 Cir., 359 F.2d 140, supra, must be applied and satisfied before a combination patent can be recognized."

The "severe test" has been repeatedly defined in the cases:

"The inventions of the claims in issue comprise nothing more than aggregations of known elements in combinations in which these elements perform no functions or operations different from those theretofore performed in similar combinations." Sperry-Rand Corp. v. Knapp-Monarch Co., 307 F.2d 344, 347 [3rd Cir., 1962].

■ It does not matter that the prior art did not teach or point out the advantages of plaintiff's application of the principles which he has used, so long as the means of employment of the principles are disclosed in the prior patents. Hamilton v. Mid-West Abrasive Company, 216 F.Supp. 411, 415 [W.D.Pa., 1963].

"But the observation of a new use in a prior patented device is not patentable; and the mere fact that the inventor did not use his device for that purpose or did not foresee that the purpose might be useful is immaterial." Triangle Conduit & Cable Co. v. National Elec. Prod. Corporation, 149 F.2d 87, 90 [3rd Cir., 1945].

"* * * this is not sufficient to make the device patentable when each of its elements is old and performed the same function in the patent in suit as in its old assembly." Modern Millinery Box Corp. v. Boas Box Co., 219 F.Supp. 615, 618 [E.D.Pa., 1963].

In addition to the nonobviousness test of § 103, defendant relies upon § 102(b), and argues that prior printed publication made more than a year before disclose the elements of this combination patent. The particular publications cited by defendant are: Fowler, Patent No. 111,051 [1871]; Allen, Patent No. 212,642 [1879]; Hartford, Patent No. 1,589,387 [1926]; Flood, Patent No. 2,014,726 [1935], and Schmitter, Patent No. 2,280,665 [1942].

Fowler, in 1871, shows a reel type container with end plates, with a pliant narrow band on which common pins are mounted transversely at their center and secured by a second strip placed over the first strip and secured by any adhesive material. Allen, in 1879, shows a reel to which is attached a strip of paper which is wound around the reel in several layers surrounding a continuous row or series of shoe nails and then pasted or otherwise fastened to itself, permitting the transportation of the package and the feeding of the nails into a pegging machine. These publications culiminate in the two disclosures most relied upon by defendant, Schmitter, in 1942, showing the reel package but using a corrugated tape to hold the cylinders in place, and Flood, in 1935, using a narrow pressure sensitive adhesive tape to hold the middle of the transversely mounted cylinders. Defendant therefore argues the statutory bar of § 102(b) in that all these significant elements of the package of the patent in suit were described in printed patents published in this country more than a year before the filing date of plaintiff's patent.

■ Plaintiff argues that the statutory bar of § 102(b) has never been held to include a case where the elements of an invention are individually shown in a group of diverse prior art patents, but only that they may be considered in applying the test of § 103 as to whether the teachings of the prior art patents would make the invention obvious. But we believe that invalidity can be established on any of the grounds specified in 35 U.S.C. §§ 101, 102 and 103. Both parties rely on In re Foster, 343 F.2d 980 [Cust. & Pat.App.1965]. That case stated:

"As to dealing with the express language of 102(b), for example, 'described in a printed publication,' technically, we see no reason to so read the words of the statute as to preclude the use of more than one reference; nor do we find in the context anything to show that 'a printed publication' cannot include two or more printed publications. * * * it is a common situation." [p. 988].

See also In re Palmquist, 319 F.2d 547 [Cust. & Pat.App.1963]. The court in Foster notes that the prior statutory standard upon which § 102(b) of the 1952 Act was based specifically included "a plurality of references". [343 F.2d p. 988].

"Thus the 'statutory bar' has not been limited to 'complete anticipation' fact situations where the complete disclosure of the invention is to be found in a single reference. At least the skill of the art has been added to the disclosure of the reference or the thing in public use in finding a bar to the grant of a valid patent, utilizing the standard pre-1953 terminology of 'no invention.'" Foster, cit. supra, 343 F.2d p. 989.

The above language from Foster is quoted for its general application, since Foster was dealing with a specific situation of a prior art reference published after the date of the invention but more than one year prior to the filing date of the application. Foster does make a distinction between the statutory bar of § 102 (b), which involves a loss of right to a patent on an invention, and § 103, which relates to the determination of whether a patentable invention has been made. In any event, Foster requires in applying § 102(b) that the invention has become obvious to that segment of the public having ordinary skill in the art prior to the time period permitted for the filing of the application for patent.

The effect of this battle of words, as we see it, is to establish for this case a time for testing the obviousness of plaintiff's claimed invention, that is, one year prior to the date of plaintiff's application, November 22, 1954. The prior publications, if they have any effect, must themselves make plaintiff's claim obvious, whether we are proceeding under § 102(b) or § 103.

■■ With respect to the determination of a motion for summary judgment on defendant's claim of prior publication under § 102(b), we do not need to meet this issue because of our determination of defendant's claim of obviousness under § 103. Anticipation is strictly a technical defense Walker v. General Motors, cit. supra, 362 F.2d p. 58. Issues of equivalence may raise disputed questions of fact, particularly in view of defendant's reliance upon multiple prior references to establish disclosure. We, therefore, conclude that summary judgment on the grounds of anticipation is not appropriate. " * * * Anticipation, like infringement, involves questions of equivalence and is an inquiry requiring a factual determination." Inglett & Co. v. Everglades Fertilizer Co., 255 F.2d 342, 345, (5th Cir., 1958). See also Cee-Bee Chemical Co. v. Delco Chemicals, Inc., 263 F.2d 150 (9th Cir., 1959); Rankin v. King, 272 F.2d 254 (9th Cir., 1959).

■ We, therefore, conclude that the patent in question, U. S. Patent No. 3,-050,186, issued August 21, 1962, is invalid under 35 U.S.C. § 103, in that the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person

having ordinary skill in the art to which said subject matter pertains.

An Order granting defendant's motion for summary judgment will be entered.

APPENDIX

## THE PRIOR ART

Plaintiff's claims and the applicability of prior art references thereto.

X - applicable
O - possibly applicable

| PLAINTIFF'S CLAIMS | Cited by Plaintiff | | Cited by Defendant / Not Considered by Patent Office | | | | | Considered by Patent Office | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FREEBURG (2,214,230) | BAGGS | ALLEN | FOWLER | FLOOD | HARTFORD | SCHMITTER | LEWIS | McKEE | HUISLANDER | FREEBURG (2,251,609) | DAHLGREN | EHLERS | FISCHER |
| 1. Packaging. | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| 2. Electronic components. | X | X | | | | | | | | | X | X | X | X |
| 3. Plurality of thin cylindrical components. | X | X | X | X | X | X | X | | | | X | X | X | X |
| 4. Thin deformable wires. | | | | X | X | X | X | | | | X | X | X | X |
| 5. Components mounted transversely. | X | X | X | X | X | X | X | X | | | X | X | X | X |
| 6. Equally spaced. | X | X | X | X | X | X | X | X | X | X | | | X | X |
| 7. Wrapped spirally. | | | X | O | X | X | X | | X | X | | | | X |
| 8. Facing inwardly. | | | | X | X | X | X | X | X | X | | | | O |
| 9. On a spool. | | | X | X | X | X | X | X | X | X | | | | X |
| 10. End plates. | | | | X | X | X | X | | | | | | | X |
| 11. Lesser width of mounting band. | | | X | X | X | X | | X | X | X | | | | |
| 12. Thin pliant mounting band. | | | | X | X | X | | X | X | X | | X | | O |
| 13. A cohesive pressure sensitive adhesive. | | | | O | X | | X | | | | | | | O |
| 14. Lead tape. | | | | X | X | | X | | | | | | | |
| 15. Used on automatic machines. | | | | | X | | | | | | | | | |